[No. 2531]

THE STATE OF NEVADA, ON THE RELATION OF
LEONARD B. FOWLER, THE DULY ELECTED,
QUALIFIED AND ACTING ATTORNEY - GENERAL,
APPELLANT, *v.* GLADYS M. MOORE, OTHERWISE
KNOWN AS GLADYS M. FAIRBANKS, AND O. E.
MOORE, OTHERWISE KNOWN AS OWEN E. MOORE,
RESPONDENTS.

[207 Pac. 75]

1. APPEAL AND ERROR—ORDER REVOKING ORDER FOR PUBLICATION OF
   SUMMONS AND QUASHING SERVICE IS AN APPEALABLE ORDER.
       An order of the lower court revoking and annulling an
   order for publication of summons and quashing service thereof
   is an appealable order.

2. ATTORNEY-GENERAL—OFFICE HAS ALL POWERS BELONGING TO IT
   AT COMMON LAW BESIDES THOSE CONFERRED BY STATUTE.
       The office of attorney-general has all the powers belonging
   to it at common law and, in addition, those conferred by
   statute.

3. DIVORCE—LAW OF MARRIAGE AND DIVORCE AS ADMINISTERED BY
   ECCLESIASTICAL COURTS IS A PART OF COMMON LAW, EXCEPT
   AS ALTERED BY STATUTE.
       The law of marriage and divorce, as administered by the
   ecclesiastical courts, is a part of the common law of this
   country, except as altered by statute.

4. DIVORCE—ATTORNEY-GENERAL IS UNAUTHORIZED TO INTERVENE
   IN DIVORCE SUIT; "INTEREST."
       The attorney-general has no power to intervene in a
   divorce suit or to bring an independent action to set aside
   a decree of divorce for fraud or collusion, either under the
   common law, or under the state statutes, including Rev. Laws,
   4133, giving the attorney-general the right to commence suit
   or make a defense where he deems it in the "interest of the
   state"; for the word "interest" must be taken in its common
   acceptation as relating to the interest of a party in the ordi-
   nary sense of the word.

5. DIVORCE—THE COURT REPRESENTS THE STATE'S INTEREST IN
   DIVORCE PROCEEDINGS.
       In divorce cases the court represents the state's interest
   throughout the proceedings. either in the presence of a
   statute authorizing some law officer to appear or in the
   absence of such statute.

APPEAL from First Judicial District Court, Douglas
County; *Frank P. Langan,* Judge.

Suit by the State of Nevada, on the relation of
Leonard B. Fowler, duly elected, qualified, and acting

Attorney-General, against Gladys M. Moore, otherwise known as Gladys M. Fairbanks, and O. E. Moore, otherwise known as Owen E. Moore, to set aside a decree of divorce, and, from an order revoking and annulling any and all service of summons by an order of publication issued, the relator appeals. **Order affirmed. Petition for rehearing denied.**

*Leonard B. Fowler,* Attorney-General, *Robert Richards,* Deputy Attorney-General, and *Homer Mooney,* Deputy Attorney-General, for Appellant:

The order appealed from is an appealable order. An order quashing personal service of summons, made on a nonresident defendant while within the state, is a final order from which an appeal will lie. Rev. Laws, 5325; Tiedmann v. Tiedmann, 35 Nev. 259.

The action at bar is not an action in personam, but one in rem or quasi in rem. The defendants are tied to the record in the divorce action, which is impeached by appellant, and which under the law is in the custody of the district court. The record there is in rem, and the status of the rem is attacked; and while the conclusion of the court herein may affect the defendants, it will do so only incidentally, indirectly, and secondarily. "A judgment rendered and duly entered in this state annulling a marriage is to be deemed a res remaining within the jurisdiction. * * * This jurisdiction cannot be denied without rendering the courts powerless to get rid of judgments which fugitives have procured from them by fraud." Everett v. Everett, 47 N. Y. Supp. 994.

Authority for the order for publication of summons is statutory. The statutes apply to all actions, whether in law or equity. The provisions are general, covering any actions that may not be otherwise provided by law, and it is upon them that the order and service herein attacked by respondents are based. The constructive service of summons upon respondents, the action being in equity to vacate a decree of divorce on

the ground of fraud, is sustained by statute and decision law.    Rev. Laws, 5026, 5027;    Everett v. Everett, supra.

The complaint states a cause of action, although it is not verified.  "But it is not verified, * * * 'which said cause of action is fully set forth in the complaint * * * and which complaint is hereby referred to and made a part of this affidavit.' * * * We are of opinion that the affidavit in question properly showed the existence of a cause of action against the defendant."    Pratt v. Stone, 25 Nev. 371.

It may be true in the abstract that "a valid decree of divorce may be obtained in the State of Nevada by the filing of a complaint under oath to the district court of the county in which the defendant may be found," but it is not true as a general proposition.    The provision must be read with substantive law, laying down premises upon which a valid decree may be predicated, and to the extent that decision law interprets and confirms the proposition.    Hood v. State, 56 Ind. 263; People v. Dawell, 25 Mich. 247;  House v. House, 25 Ga. 473;  Barber v. Root, 10 Mass. 260;  Hanover v. Turner, 14 Mass. 227;  Lyon v. Lyon, 2 Gray, 367; Chase v. Chase, 6 Gray, 157;  Smith v. Smith, 13 Gray, 209;  Shannon v. Shannon, 4 Allen, 134;  Leith v. Leith, 39 N. H. 20;  Pawling v. Bird's Exrs., 13 Johns. 192;  Borden v. Fitch, 15 Johns. 121; Vischer v. Vischer, 13 Barb. 640;  McGiffert v. McGiffert, 31 Barb. 69; Todd v. Kerr, 42 Barb. 317;  Kerr v. Kerr, 41 N. Y. 272;  Maguire v. Maguire, 7 Dana, 181;  Ditson v. Ditson, 4 R. I. 87;  Smith v. Smith, 4 Greene (Iowa) 271; Thompson v. State, 28 Ala. 12;  Parrish v. Parrish, 32 Ga. 653;  Litowich v. Litowich, 19 Kan. 451, 455.

The fact of residence is essential; the legislature has not the power to provide for judicial divorce for the inhabitants of a foreign power.  "The principle dominating the subject is that the marriage relation is so interwoven with public policy that the consent of the

parties is impotent to dissolve it contrary to the law of the domicile." Andrews v. Andrews, 188 U. S. 14; Merritt v. Merritt, 40 Nev. 385; Smith v. Smith, 19 Neb. 706; State v. Fleak, 54 Iowa, 429; Hardy v. Smith, 136 Mass. 328; State v. Arrington, 25 Minn. 29.

The state is vitally interested in the marriage relation, and in suits attempting to regulate or dissolve it, not in the same sense as the parties thereto, but because the relation affects society as a whole, its welfare and continued well-being. While it is true the members of society, in their individual capacities, may not interfere in such relation and suits, the state, as the custodian of their welfare and general well-being, has the right to do so. The interest need not be a pecuniary one, nor of any tangibility, but one based upon general public order and sound public policy. The present situation is stronger as inducing sovereign intervention, as there subsists in the record the added element of subjects of a foreign jurisdiction, in defiance of state sovereignty, entering into and consummating a fraudulent plan, scheme and undertaking, through false testimony, deceit and imposition upon a court of record. People v. Dawell, supra; Hood v. State, supra; Andrews v. Andrews, supra.

"A divorce cannot be had except in that court upon which the state has conferred jurisdiction, and then only for those causes and with those formalities which the state has by statute prescribed. * * * Marriage being a status based upon public necessity and controlled by the sovereign will for the benefit of society at large, its dissolution cannot be effected by the mere act or consent of the parties, and the state may intervene by its prosecuting officer or through a power vested in the court itself to prevent such dissolution, where it should not be decreed, although the party against whom the suit is brought may not object thereto." 14 Cyc. 577; Helmes v. Helmes, 52 N. Y. Supp. 734; Robertson v. Robertson, 178 Mo. App. 478;

Yeager v. Yeager, 43 Ind. App. 313; People v. Case, 211 Ill. 279; Jones v. Jones, 58 Or. 311; Hancock v. Hancock, 55 Fla. 680.

The facts of the case, as pleaded in the complaint, are admitted. There is the admission, not only of the nonresidence of each of the parties, but of the detailed scheme under which the court was imposed upon and deceived. Succinctly, the record shows a fraudulent and collusive judgment as between the parties themselves; a fraudulent and collusive judgment as against the state, constituting an invasion and violation of its sovereignty, and which concerns the people as a whole, and a fraudulent and collusive judgment affecting the sovereignty of the state in an action in the trial of which there were not, and could not be, any real adversary parties. The fraud or perjury was both intrinsic and extrinsic; and even where the fraud is intrinsic only, collusive divorce decrees will be annulled. "Application for divorce must be denied upon the ground of collusion—a course which makes it unnecessary to consider the other proofs in the case. * * * It is sufficient * * * to say that such practice must receive the most severe condemnation. The position this decision must leave the parties in is a question with which the court has nothing whatever to do. It must pronounce against fraud, collusion, and imposition at all times and under all circumstances, leaving the guilty parties to take whatever consequences flow from their wrong." Stowell v. Stowell, 30 N. Y. Supp. 201; E. B. v. E. C. B., 8 Abb. Pr. 45; Graham v. Graham, L. R. A. 1917B, 405; Winder v. Winder, 86 Neb. 495; McDonald v. McDonald, 175 Mo. App. 175; Gentry v. Gentry, 67 Mo. App. 552; Carney v. Carney, 116 Am. St. 80; Holmes v. Holmes, 63 Me. 420; Cassell v. Cassell, 120 Ill. 377; Sanford v. White, 132 Fed. 535; Wickersham v. Comerford, 96 Cal. 439; Peyton v. Peyton, 28 Wash. 299.

"Equity will restrain the enforcement of a judgment which was unjustly obtained by means of a conspiracy

or fraudulent collusion. This rule is applied where the conclusive agreement was between the plaintiff and the judge, between plaintiff and his attorney and defendant's attorney, between plaintiff and one of the defendants to the prejudice of another, between the parties to the action to the injury of a third person having an interest in the property of a suit." 23 Cyc. 1027; Sanford v. White, supra; Whiting v. Taylor, 8 Dana (Ky.) 403; Wright v. Muller, 59 Am. Dec. 438; Largley v. Bartlett, 18 Mont. 273; Decatur v. Pullen, 129 Ala. 638; U. S. v. Throckmorton, 98 U. S. 65.

The authority of the attorney-general is plainly and specifically conferred by statute. "Whenever the governor shall direct, or in the opinion of the attorney-general, to protect and secure the interest of the state, it is necessary that a suit be commenced or defended in any court, it is hereby made the duty of the attorney-general to commence such action, or make such defense; and such actions may be instituted in any district court in the state or in any justice court of the proper county." Rev. Laws, 4133. Furthermore, his rights and duties are more extensive than the statute; he may exercise the power which inheres in him by virtue of his office. "In view of the attitude of the legislature, and its evident purpose of reestablishing the supreme authority of the state in reference to this subject, the contention that the attorney-general has no authority to prosecute the action does not require extended discussion. The office of attorney-general * * * is vested by the common law with a great variety of duties in the administration of the government. The duties are so numerous and varied that it has not been the policy of the legislatures of the states of this country to attempt to enumerate them. Where the question has come up for consideration, it is generally held that the office is clothed, in addition to the duties expressly defined by statute, with all the power pertaining thereto at common law. * * * From this it follows that, as chief law officer of the state, he may, in the absence of

some express legislative restriction to the contrary, exercise all such power and authority as public interests may from time to time require. He may institute, conduct, and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights." State v. Robinson, 112 N. W. 269; Ex Parte Young, 209 U. S. 123; Respass v. Commonwealth, 131 Ky. 812; Attorney-General v. Shrewsbury B. Co., L. R. 21 Ch. Div. 752; Georgetown v. Alexandria Canal Co., 12 Pet. 91; People v. Oakland Water Co., 118 Cal. 234; People v. Vanderbilt, 26 N. Y. 293.

The attorney-general, by virtue of his office alone, has the power to institute the action in controversy. "That such a power should reside somewhere, and that the United States should not be more helpless in relieving itself from frauds, impostures, and deceptions than the private individual, is hardly open to argument." U. S. v. San Jacinto Co., 125 U. S. 273. The legislature itself cannot deprive the attorney-general of his common-law powers. "The attorney-general is vested with many powers and duties, and these appertain to his office under the constitution. He cannot be deprived of these common-law functions by the legislature, but new duties may be imposed." Fergus v. Russell, 270 Ill. 304; People v. McCullough, 254 Ill. 9.

"In a matrimonial action the state has an interest as well as the parties, and regardless of any lack of diligence on the part of the defendant, and even regardless of her own desires, where it is plain that a divorce has been procured by deceit practiced upon the court and by wrongful acts of one of the plaintiff's agents, the court should, in the interest of the public, unhesitatingly set aside the decree." Bauley v. Bauley, 190 N. Y. S. 129; Franklin v. Franklin, 40 Mont. 348; People v. Case, 89 N. E. 638; Smith v. Smith, 19 Neb. 711.

Respondents confuse the forum in which marital causes were administered in England with the law

applicable to the causes themselves. The jurisdiction of the forum was in the ecclesiastical courts, but the law administered was the common law. Worthington v. District Court, 37 Nev. 212. It emanated from ecclesiastical authority, which was not a sovereignty, yet it was adopted and administered as common law by virtue of the sovereignty of England, the only sovereignty in the land. "The law of marriage and divorce, as administered by the ecclesiastical courts, is a part of the common law of this country, except as it has been altered by statute." Wuest v. Wuest, 17 Nev. 217. When this became a part of the common law, all the common-law powers of the attorney-general attached thereto. Crump v. Morgan, 1 Ired. Eq. (N. C.) 91; Intro. Blackstone Comm.

*Gavin McNab* and *P. A. McCarran* (*Nat Schmulowitz* and *Gray Mashburn*, of Counsel), for Respondent:

The appeal should be dismissed, the orders made by the court below not being appealable. The statute makes a clear distinction between an order and a judgment of the court. "Every direction of a court or judge made or entered in writing and not included in a judgment is denominated an order." Rev. Laws, 5362. "A judgment is the final determination of the rights of the parties in the action or proceeding." Rev. Laws, 5238. It is within the power of the legislature alone to prescribe the cases that are appealable. 3 C. J. 279; John v. Paullin, 231 U. S. 583. There must be a final judgment before an appeal can be taken. Keyser v. Taylor, 4 Nev. 435; Meadow v. Dodds, 6 Nev. 261; Phillips v. Welch, 11 Nev. 189; Kapp v. Kapp, 31 Nev. 70. Orders quashing the service of summons or vacating an order for the publication of summons are nonappealable. Winn v. Carter D. G. Co., 43 S. W. 436; Orland v. Agr. Ins. Co., 14 Atl. 669; Persinger v. Tinkler, 51 N. W. 299; Lewis v. Barker, 65 N. W. 778; Brown v. Rice, 46 N. W. 489; Collins Co. Bank v. Hughes, 152 Fed. 414;

Tatum v. Geist, 82 Pac. 902; Reynolds v. Bank, 71 Pac. 847; Honorine M. & M. Co. v. Tallerday, 85 Pac. 626.

"A valid decree of divorce may be obtained in the State of Nevada by the filing of a complaint, under oath, to the district court of the county in which the defendant shall be found." Rev. Laws, 5838. This language is clear and unambiguous. The courts cannot give to a legislative act a meaning different from that implied by the words it contains. State v. McClear, 11 Nev. 39; State v. Parkinson, 5 Nev. 15; Ex Parte Boyce, 27 Nev. 299. Their function is to determine the intention of the legislature from the words used, in accordance with adopted rules of statutory construction. Ex Parte Pittman, 31 Nev. 43.

"Jurisdiction may be acquired in the court of a county when either of the five different states of fact is·shown to exist. * * * The length of residence of either of the parties was immaterial so far as being essential to invest the court with jurisdiction. If the suit was brought in the county where the defendant resided or was found, the length of residence of the plaintiff was likewise immaterial." Tiedemann v. Tiedemann, 35 Nev. 259. The divorce statute has been further construed by the appellate court. Merritt v. Merritt, 40 Nev. 385, 160 Pac. 22; Aspinwall v. Aspinwall, 40 Nev. 55; Wade v. Wade, 41 Nev. 533. The question of residence "is one to be determined by the trial court." Blakeslee v. Blakeslee, 41 Nev. 243; Walker v. Walker, 45 Nev. 105, 198 Pac. 433; Grant v. Grant, 38 Nev. 185.

In general, the party aggrieved by a decree of divorce is the only party who can attack it in any way. Elliott v. Wohlfrom, 55 Cal. 384. "A judgment thus rendered can be attacked only upon motion or by appeal and by the parties in interest." Estate of Newman, 75 Cal. 213. It is not error to refuse to exercise the power to set aside a judgment or decree at the instance of a mere stranger whose rights are not at all affected by the judgment or decree. Tyler v. Aspinwall, 73 Conn. 493;

Foster v. Mansfield Co., 146 U. S. 88; Ætna Co. v.
Aldrich, 38 Wis. 107; Drexel's Appeal, 6 Pa. St. 272;
Robinson v. Stevens, 63 Vt. 555; Smith v. Hall, 68
Conn. 651; Black on Judgments, secs. 317, 359.

Presenting fabricated evidence or perjured testimony
upon a trial, where the falsity might or should have
been exposed and refuted, is not such fraud in obtaining
a judgment or decree as will warrant its nullification.
U. S. v. Throckmorton, 98 U. S. 61; Vance v. Burbank,
101 U. S. 514; U. S. v. Gleason, 90 Fed. 778; Nelson v.
Meehan, 155 Fed. 1; Duckworth v. Duckworth, 35 Ala.
70; Scott v. Penn, 68 Ark. 492; Poco v. Cohn, 91 Cal.
129; Donovan v. Miller, 12 Idaho, 600; Ames v. Snider,
55 Ill. 498; Riley v. Murray, 8 Ind. 354; Cottle v. Cole,
20 Iowa, 481; Bleakley v. Barclay, 75 Kan. 462; Gus-
man v. Hearsey, 28 La. Ann. 709; Maryland Steel Co.
v. Marney, 91 Md. 360; Greene v. Greene, 2 Gray, 361;
Miller v. Morse, 23 Mich. 365; Lieber v. Lieber, 239
Mo. 1; Demeritt v. Lyford, 27 N. H. 541; Wilson v.
Anthony, 72 N. J. Eq. 836; Woodworth v. Van Bus-
kirk, 1 Johns. Ch. 432; Michael v. Bank, 84 Ohio St.
370; Brown v. Trent, 36 Okl. 239; Friese v. Hummel,
26 Or. 145; Latimer v. Dean, 31 Pittsb. L. J. (N.S.)
192; White v. White, 86 Atl. 552; Robinson v. Robin-
son, 77 Wash. 663.

The law of England covering divorce is the ecclesiasti-
cal and not the common law, and therefore jurisdiction
rests entirely upon statute. Burtis v. Burtis (N.Y.)
Hopkins Chancery, 557. There must be a legislative
enactment to declare the jurisdiction before any tri-
bunal can exercise is. Perry v. Perry, 2 Paige, 501;
Willard, Eq. Jur. 655; Worthington v. District Court,
37 Nev. 212. The attempt of the attorney-general to
have a decree of divorce annulled upon the grounds of
alleged perjury does not come under any of the subdi-
visions of his powers and duties under the common law.
People v. Minor, 2 Lans. (N.Y.) 396.

The attorney-general has no power, authority, or
right to intervene in an action for divorce, nor to bring

an independent action to set aside a decree of divorce granted by a court of the state. Through its attorney-general, the state is a mere volunteer in this controversy, having no right to assert nor duty to perform; the attorney-general labors under no responsibility, and the state has no legal, equitable nor remedial interest in the matter.

"Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided." Rev. Laws, 4986. The exception covers actions prosecuted by executors, administrators and trustees of express trusts. Rev. Laws, 4987. No cause of action exists in favor of the state. People v. Haggin, 57 Cal. 579. While the "government, or public, occupies, without being mentioned in the pleadings, the position of a third party" (2 Bishop M. D. & S. 220), there is no provision under our laws for the representation of the so-called third party in divorce actions. The court or the judge represents the public, in that he is charged with the responsibility of exercising "constant watchfulness over the public interests in the cause." It is the "conscience of the court that must be satisfied, not merely as between the parties of record, but as between them and the community. * * * And he looks after those interests as far as his other functions of administering judicial justice permit." The interest of the state in a divorce proceeding cannot be regarded as reaching the dignity of an interest equal to that of a party; it does not mean that "it is a party to the action in any ordinary sense of the word." 2 Bishop M. D. & S. 222, 223, 275; Ex Parte Sheldon, 44 Nev. 368, 193 Pac. 967; Bancroft v. Bancroft, 178 Cal. 359; Rehfuss v. Rehfuss, 169 Cal. 86; Devoe v. Superior Court, 140 Cal. 476; Grannis v. Superior Court, 146 Cal. 245; Lee v. Lee, 19 Wash. 355; People v. Pacheco, 29 Cal. 210. When a statute gives a cause of action and designates the persons who may sue, none but the persons designated have the right to bring an action. 30 R. C. L. 664.

In the absence of specific legislation, the attorney-

general has neither right, power nor authority to bring an independent action to set aside a decree of divorce. In England it was found necessary to adopt a special act of Parliament in order to give the king's proctor the right to intervene in a divorce action. Hunter v. Hunter, 93 L. T. R. (N.S.) 451; Alexandre v. Alexandre, 23 L. T. R. (N.S.) 268; Hudson v. Hudson, 1 P. & D. 65; Latour v. Latour, 10 H. of L. Cas. 585. Originally no jurisdiction existed in the common-law courts to grant divorces. Worthington v. District Court, 37 Nev. 212. If the common-law courts had no jurisdiction over divorces, obviously the attorney-general would have no right under the common law to intervene.

"The constitution of the state provides that the attorney-general shall perform such duties as may be prescribed by law. * * * In the absence of a statute authorizing him to act or appear for the state, the attorney-general is powerless to do so." Railroad Tax Cases, 136 Fed. 233.

Where a statute, either expressly or by reasonable intendment, forbids the exercise of powers not expressly conferred upon the attorney-general, a grant by statute of certain powers operates to deprive him of those powers belonging to him under the common law. Cosson v. Bradshaw, 160 Iowa, 296; State v. Seattle Co., 28 Wash. 488; Julian v. State, 23 N. E. 690; Hord v. State, 79 N. E. 916; Parker v. State, 18 L. R. A. 567.

The "interest of the state" (Rev. Laws, 4133) means that the state must have a legal and substantial interest, either as a plaintiff or defendant, in the controversy; it must have some pecuniary interest in the subject of the action; an interest substantial, as distinguished from a mere interest as a spectator, or that which depends upon the broad, general and ephemeral ground of the "well-being of public society and sound public morality." 20 R. C. L. 662; 20 Stand. Ency. Proc. 895; 30 Cyc. 21. The effect of a want of remedial interest

is far reaching. 30 Cyc. 31. In the absence of statute, the judge hearing a divorce case "assumes that the public is a party, not in the sense of either asking or opposing the divorce. 2 Bishop M. D. & S. 223; Baxter's Executors v. Baxter, 10 Atl. 814; Dix v. Mercantile Co., 22 Ill. 272; Shoemaker v. Board, 36 Ind. 175.

By the Court, DUCKER, J.:

This is a suit to set aside a decree of divorce.

The appellant's opening brief contains a concise statement of facts, which, with some slight changes, we will adopt.

The respondent, Gladys M. Moore, as plaintiff, on the 1st day of March, 1920, filed in the district court of the First judicial district of the State of Nevada, in and for Douglas County, a complaint against O. E. Moore, as defendant, for divorce, and thereupon summons was issued, which said summons and complaint on said last-named date were served upon said O. E. Moore in Douglas County by the sheriff thereof. On the 2d day of March, 1920, said O. E. Moore, through his attorneys, caused to be filed to said complaint his answer upon the merits, to which said answer there was annexed his power of attorney to said attorneys executed before the clerk of said court on said 1st day of March, 1920. Thereafter, on the 2d day of March, 1920, said action was tried and decided by said court, and pursuant thereto findings were filed and decree of divorce was entered in favor of plaintiff and against the defendant.

On the 16th day of April, 1920, Leonard B. Fowler, the duly elected, qualified, and acting attorney-general of the State of Nevada, filed in the First judicial district court of the State of Nevada, in and for the county of Douglas, in behalf of the state, a complaint against Gladys M. Moore, known as Gladys M. Fairbanks, and O. E. Moore, known as Owen E. Moore, defendants, and thereupon summons was issued in said action, which said complaint prayed for judgment and decree in favor

of plaintiff and against defendants in said action; that the decision, findings of fact, and conclusions of law, and said decree in said action entitled Gladys M. Moore, plaintiff, v. O. E. Moore, defendant, as aforesaid, be declared, adjudged, and decreed to be and to have been made, filed, and entered therein without and in derogation of the jurisdiction of said court, and, accordingly, that the same and each of them were at all times and now are null, void, and of no force and effect whatsoever; that the same and each of them be annulled, vacated, set aside, and held for naught; and that plaintiff be granted and awarded such other and further relief as may be agreeable to equity. The complaint is unverified.

Thereafter, on the 28th day of April, 1920, the appellant, by and through its relator, filed in said action his affidavit for an order for the publication of the summons so issued, and thereupon the court signed an order for the publication thereof, and pursuant to said order, on the 3d day of May, 1920, in the county of Los Angeles, State of California, said summons, together with a certified copy of said complaint, was personally served upon Gladys M. Moore, known as Gladys M. Fairbanks, by a deputy sheriff in the county of Los Angeles, State of California.

And thereafter, on the 11th day of June, 1920, said Gladys M. Moore, known as Gladys M. Fairbanks, caused to be served and filed in said district court her motion and notice of motion for an order, judgment, and decree, vacating, annulling, and declaring void said order for the publication of summons, and quashing the service of summons upon her, which said motion was heard by the court on the 27th day of November, 1920, and thereupon argued and thereafter briefed by respective counsel; and theretofore having been submitted, said motion on the 25th day of June, 1921, was decided by the court in favor of said Gladys M. Moore, respondent herein, and in accordance with said decision the court entered its order as follows:

"It is the order of this court that the order for publication of summons heretofore made in this cause be and the same is hereby revoked and annulled and any and all service of summons made upon the defendants or either of them by reason of said order for publication is hereby quashed and set aside."

To which said order the plaintiff duly excepted, and it is from this order that this appeal is prosecuted.

1. The main question involved is the power or authority of the attorney-general of the State of Nevada to institute and maintain this action. On account of the importance of this question we will deal with it directly, passing by all other contentions made by the respondents, except the objection that the order appealed from is not an appealable order. We deem this objection settled adversely to respondents in the case of Tiedemann v. Tiedemann, 35 Nev. 259, 129 Pac. 313, and hold that the order of the lower court revoking and annulling the order for publication of summons and quashing the service thereof is an appealable order.

2. The attorney-general contends that, as the chief law officer of the state, he is empowered to intervene in its behalf in a divorce suit, and is likewise empowered, on relation of the state, to maintain the present action to vacate and set aside the decree in the case of Moore v. Moore. He claims that the office of attorney-general was clothed with this power at common law, and that, as it is a constitutional office in this state, it retains all of its common-law powers and duties.

He contends further that his authority in this respect is also derived from the statute.

We are in accord with his contention that the office of attorney-general in this state has all of the powers belonging to it at common law, in addition to those conferred by statute; but we are of the opinion that the attorney-general had no power to intervene in a divorce suit, or to bring an independent action to set aside a decree of divorce on behalf of the government under the common law.

Prior to 1858, and from a very remote period in England, the ecclesiastical tribunals had exclusive jurisdiction over divorce, except that divorces a vinculo matrimonii were occasionally granted by special acts of Parliament during that time.

3.  The common law which we received in this country from England was the common law as it existed when this jurisdiction still belonged to the ecclesiastical courts, and it has been held by this court that the law of marriage and divorce, as administered by the ecclesiastical courts, is a part of the common law of this country, except as it has been altered by statute. Wuest v. Wuest, 17 Nev. 217, 30 Pac. 886.

4.  By an act of Parliament passed in 1857, and by its provisions made effective in 1858, known as the Matrimonial Causes Act, the jurisdiction of the ecclesiastical courts over divorce was transferred to a court established by the same act and called "The Court for Divorce and Matrimonial Causes," 20 and 21 Vict. c. 85.

Subsequently, in 1860, this act was amended so as to permit the queen's proctor, under the direction of the attorney-general, and by leave of the court, to intervene in divorce suits for the purpose of preventing collusion. 23 and 24 Vict. c. 144. This amendment is, of course, no part of the common law received in this country, and, even if it were, it would not enable the attorney-general to intervene, for obviously it only invests the attorney-general with discretion to direct another officer to intervene. If the attorney-general was authorized under the common law of England to intervene in divorce suits, it is evident that the act of 1860 divested him of this power and conferred it upon another. But, notwithstanding an extensive research, aided considerably by the able and exhaustive briefs of counsel, we have been unable to find any evidence of authority on the part of the attorney-general to participate on behalf of the government in divorce suits in the ecclesiastical courts having been exercised or claimed in England. If there is any decision recognizing or declaring

such right, either in England or in this country, it has escaped our attention, and the attention of the lower court, and counsel as well.

The decisions from the different states of the Union which hold that the office of attorney-general is clothed with all its common-law powers do not generally attempt to specify them. In People v. Miner, 2 Lans. (N. Y.) 396, however, the court enumerates a number of the common-law powers of the attorney-general, and it is to be noted that the right claimed does not appear in this enumeration. Nowhere in the excellent works of Mr. Bishop and Mr. Nelson on Marriage and Divorce, or in any of the books of the law-writers on this subject which we have examined, has power of this character been stated to belong to the attorney-general, at common law. Some of the states, for example, Washington, Oregon, Indiana, and Kentucky, have adopted legislation authorizing and requiring the district attorneys of the respective states to appear and defend in divorce suits, in so far as it may be necessary to prevent fraud and collusion. This legislation in itself indicates a conviction in these states that without it the state could not intervene in divorce suits by any of its law officers, either under the common law or by statute. In this regard the attorney-general insists that the duties and powers granted district attorneys by such legislation are cumulative only, and independent of the duties and powers of the attorney-general of the several states derived from constitutional, statutory, and common-law sources. If the power exists under the common law, or under some general statute, why has it never been exercised, either in England or this country? It is urged that there has never been such a flagrant case as this before. This is a broad statement, but it seems to us that a power so potential for the preservation of the general welfare ought to be exercised whenever there is reasonable ground to believe that there is an attempt to dissolve the marriage relation contrary to public policy. While it is within the range of possibility, it is

still highly improbable that, during all the years in which an aggrieved spouse could obtain a judicial separation or a dissolution of the marriage bonds under the laws of England or of this country, the authority of the attorney-general over divorce suits has remained dormant for want of a proper occasion to call it into activity.

The power of a law officer of the state to intervene in its behalf in a divorce suit, if it exists at common law, has been of no benefit to the public either in this country or in England, the home of the common law. As no evidence of any rule of the common law, or practice of the ecclesiastical courts connecting the attorney-general of England with authority in divorce suits on behalf of the government can be found, we must hold that such power does not exist, and it remains to be determined whether it has been conferred on the attorney-general of this state by statute. We must also answer this question in the negative. There is no special statute in this state conferring authority on any law officer to intervene in divorce suits, as in the states mentioned.

Section 4133 of the Revised Laws of Nevada is the statute which it is asserted empowers the attorney-general with the authority he claims over divorce suits. There is no other statute which gives any ground for argument in this regard. The section reads:

"Whenever the governor shall direct, or in the opinion of the attorney-general, to protect and secure the interest of the state, it is necessary that a suit be commenced or defended in any court, it is hereby made the duty of the attorney-general to commence such action, or make such defense; and such actions may be instituted in any district court in the state, or in any justice court of the proper county."

The basis of the attorney-general's claim of power conferred by this statute rests in the peculiar nature of a divorce suit, presenting as it does a triangular aspect as to parties. The state, or sovereign, is deeply concerned in maintaining the integrity and permanence of

the marriage relation, on which depends so much the happiness of the people and the progress of civilization.

"In every enlightened government," said the court in Noel v. Ewing, 9 Ind. 37, "it [marriage] is preeminently the basis of civil institutions and thus an object of the deepest public concern. In this light marriage is more than a contract. It is not a mere matter of pecuniary consideration. It is a great public institution, giving character to our whole civil polity."

Speaking of this interest of the state in Campbell's case, decided in Maryland in 1829, Chancellor Bland said:

"A contract of marriage is, in many respects, so highly important in its nature as not only to involve the interests and happiness of the immediate parties, and to require the free consent of a man and woman who have a perfect bodily and mental capacity to contract; but it is a contract to which society is a party, and in which it has a deep interest." 2 Bland, 209, 235, 20 Am. Dec. 360, 376.

In the Supreme Court of the United States, the court, speaking through Mr. Justice Field, said:

"Other contracts may be modified, restricted, enlarged or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity, the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress." Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654.

The foregoing excerpts of decisions deflect the universal judicial view of the importance of the marriage relation to the state. This court has expressed the same view. Danforth v. Danforth, 40 Nev. 444, 166 Pac. 927; Ex Parte Sheldon, 44 Nev. 268, 193 Pac. 967.

While the state, from considerations of public policy, is unquestionably interested in maintaining the marriage status, we do not think an interest in this sense

is comprehended within the meaning of the general statute on which the attorney-general relies. In the first place, no authority has been cited, and we feel safe in asserting that none can be found, construing this, or any similar statute, as conferring authority on the attorney-general in divorce cases. In the State of Michigan a statute defining the general duties of the attorney-general of that state reads:

"The attorney-general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party; and shall also, when requested by the governor, or either branch of the legislature, appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party, or interested." 1 Howell's Mich. Statutes (2d ed.) sec. 612.

Yet, notwithstanding this statute, the Supreme Court of Michigan has determined in Baugh v. Baugh, 37 Mich. 59, 26 Am. St. Rep. 495, that none but the parties can intervene in a divorce suit. This was a suit in which the infant children of divorced parties, by their maternal grandmother, filed a bill to set aside the divorce and to have a second marriage of the father declared null and void. The court said:

"The jurisdiction over divorce is purely statutory, and the legislative authority has not seen fit to allow any but the parties to intervene in such suits. The husband and wife are the only persons recognized as parties. * * * It is for the legislature to determine to what extent public policy requires the power of intervention to be vested in any but the parties to divorce suits. * * * In the meantime the courts have no right to sanction any such intervention. It is expected of all divorce courts that they will be vigilant in examining the circumstances of all cases before them, and not allow any decree without a full scrutiny. The means furnished for this purpose are adequate for most cases."

It is a most natural conclusion to reach that, if the legislature had intended to confer upon the attorney-general a power so great as to enable him to intervene in any divorce suit, it would have expressed its purpose in a special statute and would not have included it in such a general term as "interest of the state." Moreover, wherever the power has been specially conferred upon a law officer of any state, it has been expressly or impliedly limited by the statute. Lee v. Lee, 19 Wash. 355, 53 Pac. 349; De Foe v. De Foe, 88 Or. 549, 169 Pac. 128, 172 Pac. 980.

But in the instant case, if the attorney-general's contention should be recognized, his right to intervene or bring an independent action to set aside a decree of divorce is, by this general statute, less restricted than that of an ordinary party in interest. One who is a party in the ordinary sense of the word is not given the right to intervene in an action under any general statute, but by special statute, limiting the time of such intervention, and outlining the procedure. When the legislature has been careful to make special provisions for intervention in cases of pecuniary importance, how can it be inferred that it intended to bestow upon the attorney-general, by the general statement, "interest of the state," in section 4133, the right to intervene or attack a divorce decree, at his option, when the consequences might far transcend any pecuniary considerations?

That the district attorneys of the counties of the state have not construed this statute as conferring authority upon the attorney-general to appear for the state in divorce proceedings may be inferred from the fact that they have never deemed it improper to represent a husband or wife in a divorce proceeding. We apprehend that the district attorneys would not have assumed this position in opposition to the state's interest, if they were of the opinion that in such a suit they might at any time be confronted by the chief law officer of the state representing its interests. The spectacle of

these different law officers arrayed for and against the state·in a divorce suit would be an anomaly of unusual absurdity; yet not at all improbable under the attorney-general's contention.

·As far as we can inform ourselves, the present attorney-general is the first one to construe the statute as conferring authority on that official in divorce suits. If, as he contends, it clothes him with authority, is it not his duty to investigate every divorce suit brought in any of the seventeen jurisdictions in this state, to the end that fraud and collusion be not practiced on the court? Under the present state of the law, could this duty be effectively performed? No provision of law is made for the service of summons in a divorce suit upon the attorney-general. The clerks of the district courts, in whose offices divorce suits are filed, are under no legal obligation to give him notice of the filing of such a suit. Is it not reasonable to assume that, if the legislature had intended to charge the attorney-general with any duty in divorce suits, it would have provided some method of giving him notice of the filing of such a suit, to enable him to effectively discharge his duty?

The word "interest," as employed in section 4133, must be taken, in its common acceptation, as relating to the interest of a party in the ordinary sense of the word, and, as so construed, cannot be held to include the peculiar interest which the state has in the matter of granting a decree of divorce.

Section 4133 names the general duties of the attorney-general, and is merely a statutory expression of his common-law powers, which, as we have seen, does not embrace the power asserted.

It would result in an unwarranted extension of this opinion to analyze the cases cited and discussed by the attorney-general which he claims support his contention that he can maintain this action in the name of the state. The decisions referred to have no analogy with the present case. In these decisions the attorney-general's right to maintain the particular action was

sanctioned either by virtue of his common-law powers, or by statute. In United States v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747, quoted from extensively, in which the authority of the attorney-general of the United States to initiate and control the suit was upheld, a property right of the government was, in effect, alleged to be prejudiced by the fraud of its own officers. It must be readily recognized that the government's interest in a suit of this kind is extremely dissimilar to the interest of the state in a suit for divorce.

5. But notwithstanding the fact that the legislature has not empowered the attorney-general or the district attorneys to appear for the state in divorce suits, its interest is not therefore unrepresented. In divorce suits the court represents the state's interests throughout the proceedings, either in the presence of a statute authorizing some law officer to appear, or in the absence of such a statute. Yeager v. Yeager, 43 Ind. App. 313, 87 N. E. 144.

In Danforth v. Danforth, supra, this court said:

"As said in Ribet v. Ribet, 29 Ala. 348, actions of this nature are of a triangular sort, and such a cause is never concluded as against the court, and it may and usually does satisfy its conscience regardless of the pleadings."

Again, in Ex Parte Sheldon, 44 Nev. 268, 193 Pac. 967, it was said:

"The court represents this interest of the state in divorce actions, and is in duty bound to scrutinize the testimony and proceedings with more care than in ordinary civil actions, to the end that collusion of the parties may not effect a dissolution of the marriage relation, when the real facts of the case, if known, would forbid it."

It is a doctrine of general acceptance that the court represents the interest of the state in divorce suits. Baugh v. Baugh, supra; Powell v. Powell, 80 Ala. 595, 1 South. 549; Rehfuss v. Rehfuss, 169 Cal. 86, 145

Pac. 1020; People v. Case, 241 Ill. 279, 89 N. E. 638, 25 L. R. A. (N.S.) 578; Yeager v. Yeager, 43 Ind. App. 313, 87 N. E. 144; 2 Bishop on Marriage, Divorce and Separation, secs. 496, 498, 663. In the work cited last above, the eminent law-writer says:

"The judge, sitting in a divorce cause, deems himself under a sacred obligation to look after the interests of all who cannot be present, yet who may be prejudiced by the sentence prayed. And establishing the justice of the plaintiff's complaint, not merely as between the parties of record, but as between them and the community, including persons specially interested yet not before the court, is what is frequently termed satisfying the conscience of the court." Section 496.

Again, in section 663, Mr. Bishop says:

"The public, which we have seen to be a party in all divorce suits, occupies a unique position, sometimes embarrassing to the court. It does not ordinarily appear by counsel, and when without counsel does not plead. As against this party, when only thus represented by what is called the conscience of the court, the plaintiff is entitled to the decree on his case being duly and fully proved. But this party, unlike the others, never loses a right by laches; and so, whenever a defense comes out in the evidence, whether alleged or not, it is fatal to the proceedings. A maxim in these suits, therefore, is that a cause is never concluded as against the judge; and the court may, and to satisfy its conscience sometimes does, of its own motion, go into the investigation of facts not contested by pleadings."

And in section 664, he says:

"The limit to the right of the public to be protected while thus disregarding the just and common practice of the court cannot be precisely defined by rule. The judge, keeping in view the precedents, with his 'conscience' always awake, shall see that while the record parties are not deprived of the justice of the law, the

public good, which suffers from every dishonest divorce, and from every one not as well within the spirit of the statute as its terms, is not sacrificed. A rule more exact than this does not appear to be in the nature of the case possible."

It is evidently the opinion of Mr. Bishop that the duty of the court to represent the state's interest in divorce suits is exclusive, except in those states where the prosecuting officer is charged by statute with a like duty, for in section 498 he states:

"It (a divorce suit) affects in a special way the interests of the entire community, and the separate private interests of a considerable number of third persons not nominally parties. For the protection of those interests, the judge assumes that the public is a party, not in the sense of either asking or opposing the divorce, but as seeking justice for itself and for all interested private persons who are not before the court; and he looks after those interests as far as his other functions of administering judicial justice permit. *In a few of the states, the prosecuting officer appears in the divorce cause for the protection of those interests, but such is not the common course in our tribunals.*" (The italics are ours.)

It is contended by the attorney-general that the allegations of the complaint charging that the divorce suit was entered and the decree obtained in pursuance of a fraudulent and collusive scheme concocted and consummated by the respondents and those acting with them, whereby the jurisdiction of the court was wrongfully invoked, are admitted by the motion to the order for publication and service of summons, and therefore manifest, and appalling injustice will be permitted against the sovereign state, if he be not allowed to maintain this action in its behalf. Be that as it may, we cannot legislate a remedy. Until the legislature acts and empowers the attorney-general, or other officer, to represent the state's interest in divorce suits, the duty

must remain where it has been always exclusively lodged, in the court sitting in the cause. As said in Baugh v. Baugh, supra:

"In the best circumstances, justice will sometimes miscarry, but this is not peculiar to divorce cases, and it will not do to resort to unauthorized measures to redress legal misfortunes or wrongs. It would not be desirable, in order to get rid of some unjust judgments, to destroy the force of judgments generally, and allow them to be attacked by third parties where the legal rules which have been established to determine their effect have not permitted it."

As the attorney-general had no authority to institute this action, it follows that the order appealed from should be affirmed.

It is so ordered.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.