MARSHAK *v.* MARSHAK.

Opinion delivered November 2, 1914.

1. MARRIAGE AND DIVORCE—ANTE-NUPTIAL CONTRACT.—In an action for divorce by the husband against the wife on the ground of desertion, where the reason for the wife leaving the husband was because of the treatment received by her at the hands of his parents, with whom they lived, an ante-nuptial agreement on the part of the wife to live with the husband's parents, has no binding force, being terminated by and merged into their marriage contract, which bound them to live together as husband and wife.

2. DIVORCE—DESERTION BY WIFE—GROUNDS.—A husband will not be granted a divorce against his wife, who has left him for over a year, where the reason for her leaving was because he required her to live with his parents, with whom she could not get along amicably; it appearing that plaintiff's husband was strong and able-bodied, that his parents were the same, and did not require any assistance from him, and that the defendant's wife was willing to live with her husband, at any place other than with his parents.

Appeal from Yell Chancery Court, Dardanelle District; *Jordan Sellers,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On the 25th day of May, 1912, Joe Marshak instituted an action of divorce against Gustie Marshak on the ground of desertion. The facts, as shown by the record, are substantially as follows:

Joe Marshak is thirty years of age, and is the son of a farmer residing near the town of Dardanelle, in Yell County. On the 6th day of February, 1910, he married

Gustie Lucas, the daughter of a neighboring farmer. She is twenty-four years of age. After their marriage they went to live with the father and mother of the plaintiff, each of whom is about seventy years of age. In July after the marriage the defendant left the plaintiff and stayed away from home three days. He went to her father's house, where she was, and she returned home with him. They continued to live with his parents until the first part of May, 1911, when she again returned to her father's home and has not lived with the plaintiff since.

During the pendency of the action and on the 31st day of March, 1913, the plaintiff wrote to his wife that his father and mother had agreed to move from their place and go to live with another son, who resided in the neighborhood, if she would return and live with him. In his letter he asked her to let him know whether she would return or not. She answered the letter, and stated that she had hesitated because she feared his letter was not in good faith, and wrote him that his parents must move out and that she must be placed in charge of the home as its exclusive mistress, free from the domination of any one except himself, and that if, after further reflection, she could convince herself of his sincerity in the matter, she would return to him. The plaintiff did not reply to this letter, and says that he did not do so because she had left him, and he thought she should return without any further action on his part.

The defendant testified that during the time she lived with her husband at the home of his parents the latter constantly abused her and mistreated her; that they called her vile names, which she mentions in her deposition, and that they were at all times ill-tempered and disagreeable toward her; that she told her husband that she had overheard his mother saying hard things about her, and that she could not live with her; that she told him that their remarks and abuse of her and bearing and temper toward her made it impossible for her to live in their house, and asked him to provide her a home at another

place; and that her husband did not accede to her request and did not in any way try to prevent his parents from mistreating her. She further stated that after she left him and before this suit was instituted she told him if he would provide a home for her she would go and live with him, but that she could not attempt to live with his father and mother any more, because of their mistreatment of her. She stated that more than once before the bringing of this suit she had told him that if he would provide a home for her she would be glad to go and live with him, and that he had replied that he could not make a living, and that since the bringing of this suit she had at different times offered to live with him if he would provide a home for her separate and apart from that of his parents. She stated in her deposition that she had been at all times ready and willing and was then willing to live with him if he would provide a home for her, and that she could not live with his father and mother.

She is corroborated in all her statements by her father, except that he stated that he did not know whether or not the parents of the plaintiff abused her or used the words toward her which she attributed to them.

The parents of the plaintiff testified that they had never applied any vile epithets to the defendant, and that they had not mistreated her or abused her while she lived with them. They said she would go visiting three or four times every week, and that she would mistreat her husband. The mother of the plaintiff denied that she had quarreled with the defendant while she lived at their house, but stated that she had told the defendant that she did not think it right for her to be gone from home so much. She further stated that the defendant told her that she would not live with her husband any more.

The plaintiff corroborated his mother and father in their statements, and said that they never mistreated her while she lived with them.

The record shows that the father and mother of the plaintiff were well-to-do people, and had two other married sons living in the same neighborhood to whom they had deeded a part of their property. They had never

given the plaintiff any of their property, but it appears it was their intention to live with him and leave him their home place when they died. The record shows that they were in good financial circumstances, and were physically and mentally capable of taking care of themselves. They were in no sense dependent upon their children for support or for care and attention. The plaintiff was an able-bodied, hard-working young man, and had no bad habits.

The evidence on the part of the plaintiff tends to show that the defendant, after she left her husband, was seen several times in the company of some neighbor girls who did not bear a good reputation, but there is nothing whatever in the record from which it might be inferred that the defendant herself was not of good character. Other facts will be stated or referred to in the opinion.

The chancellor found that the plaintiff was not entitled to a divorce and dismissed his complaint for want of equity. The plaintiff has appealed.

*The Appellant, pro se.*

1.   The abandonment was admitted and the justification altogether insufficient. Neither party is justified in abandonment except for such causes as constitute grounds of divorce. 97 Ark. 125.

2.   Mere * * * language and epithets used by parents could not render a wife's condition intolerable under our statute, but, if so, they are no grounds of divorce. *Ib.* No ill-will nor malice can be implied on part of appellant from what his parents said. 104 Ark. 381; 5 A. & E. Enc. L. (1 ed.) 816-826.

3.   The desertion being admitted, appellee must make out her defense by showing grounds for divorce. An offer to return must be made in good faith, before the full statutory period of desertion has elapsed. 5 A. & E. Enc. L. 801-2, and notes. The proof shows a willingness to support according to station and means, if she would return to the home—she declined. The answer, if proven, was no defense; but it was not proven, and was made in bad faith. The demurrer should have been sustained.

*Bullock & Davis,* for appellee.

1. The demurrer admitted the statements in the answer to be true. The defense must be sufficient to constitute a ground of divorce and two are shown in the answer. (*a*) Wilful abandonment and continuous desertion for more than twelve months. (*b*) Such cruel and barbarous treatment as to render life intolerable—both statutory grounds of divorce. 29 Vt. 148; 14 Cal. 654; 23 N. J. Eq. 337; 34 L. R. A. 759; 123 App. Div. N. Y. Supp. 1044.

2. The right of the husband to fix the domicile is not absolute. His intent must be *bona fide* and without fraud, and he must exercise reason and discretion. A wife should not be required to live with relatives of her husband if her peace of mind is seriously disturbed thereby. 29 Vt. 148; Schouler on Husband & Wife, § 59; 5 A. & E. Enc. Law (1 ed.), p. 806, note 5, 802, note 7; 4 Wis. 64; 23 N. J. Eq. 337.

3. To obtain relief, plaintiff must come with clean hands. Bish., Mar. & Div., § § 201-409; 41 W. Va. 126; 3 Pick. 299; 15 Am. Dec. 210; 41 Barb. 114.

4. The conduct of appellant is desertion. 82 Ark. 278; 98 *Id.* 193; 133 S. W. 931.

5. No objections to his wife's absence have ever been made; but the testimony shows he connived at it, and that he would not take her back under any circumstances. She was absent with his consent. 35 Mich. 431; 50 *Id.* 49; 1 Nelson, Divorce, § 67; 1 Bishop on Mar. & Div., § 1671.

HART, J., (after stating the facts). The sole ground upon which the plaintiff relied to obtain a divorce was desertion. The second subdivision of section 2672 of Kirby's Digest provides that the courts shall have power to dissolve a marriage contract where either party wilfully deserts and absents himself or herself from the other for a space of one year without reasonable cause. The record shows that the defendant has been absent from the home of the plaintiff for more than one year before the institution of this action. It is the contention

of the plaintiff that the husband, because he is legally responsible for the support of his family, has an absolute right to choose and establish the domicile; it is also the contention of the plaintiff that the preponderance of the evidence shows that the parents of the plaintiff did not abuse and mistreat the defendant, and that her refusal to live with the plaintiff at the home of his parents was without reasonable cause, and amounted to desertion within the meaning of the statute.

On the other hand, it is contended by counsel for the defendant, as held by the Supreme Court of Nebraska in the case of *Brewer* v. *Brewer,* 13 L. R. A. (N. S.) 222, that every wife is entitled to a home corresponding with the circumstances and condition of her husband, over which she shall be permitted to preside as mistress; and that she is not guilty of desertion within the meaning of the statute where she refuses to live in the home of her husband's parents which is under their domination and control. To the same effect see *Powell* v. *Powell,* 29 Vt. 148; *Hall* v. *Hall,* 34 L. R. A. (N. S.) 758.

(1) We have reached the conclusion that the chancellor did not err in refusing to grant a divorce to the plaintiff, but, in doing so, we do not deem it necessary to adopt in its entirety the contention of either party to this suit. It is apparent from the record that, while the parties to this suit may not have lived in perfect harmony, the principal subject of difference between them at any time was as to living with the mother and father of the plaintiff. The plaintiff testified that before the marriage the wife agreed to live with him at the home of his parents. This was an ante-nuptial contract and has no binding force. It was terminated by and merged into their marriage contract which bound them to live together as husband and wife.

(2) The principal question for us to determine is whether or not the wife wilfully remained away from the home of her spouse for a year without reasonable cause. We do not deem it necessary to determine whether or not under any circumstances the husband could establish

his domicile at the home of his parents and compel his wife to live there or be guilty of desertion within the meaning of the statute. It is true the parents of the plaintiff testified that they did not abuse or mistreat the defendant while she lived with them. In this respect they are corroborated by the plaintiff, but we do not deem that to be decisive of the rights of the parties in this case. The undisputed facts show that the parents had ample means of their own to support them, that they were not feeble in body or weak in mind, and that they did not need the services of their son to wait upon them. Besides, the record shows that they had two other sons, married and residing in the neighborhood, to whom they had deeded a part of their property and with whom they were on affectionate terms.

If it be conceded that the parents of the plaintiff did not call the defendant vile names or abuse and mistreat her to the extent that she claims they did, still it is apparent from the record that the defendant could not get along with the plaintiff's parents and that their relations were unfriendly and unpleasant. The plaintiff's mother says that she did not quarrel with the defendant but admits that she did tell her that she was away from home too much. The defendant testified that after she left the plaintiff and before this suit was instituted that she told him she could not get along with his parents and live happily in their home, and that she was perfectly willing to live with him at any other home he might provide. We do not think the defendant left her husband because she did not desire to live with him, but, on the contrary, she left him because she was not able to live happily in the home of his parents. There was no necessity for her to live there. The plaintiff was a strong, able-bodied young man, and was able to provide her a home at another place. Under the circumstances, we think a just and affectionate husband should have listened to the pleadings of his wife and should not have arbitrarily confronted her with a decision of either living unhappily with him at his parents' home or living separate and apart from him at another place.

· We do not regard the letters of the parties to each other written after the institution of the suit as of any importance in the case. It seems that these letters were written by each one simply for the purpose of obtaining an advantage over the other in the trial of the case. If the parties were sincere in the statements they made in their letters, there seems to be no reasonable cause why they should not again live together. They are both young, and of good moral character. It is true, the evidence shows that the defendant was seen in the company of some neighbor girls who bore a bad reputation, but there is nothing whatever in the record from which it might be inferred that the defendant herself has been guilty of any improper conduct. Marriage was instituted for the good of society, and the marital relation is the foundation of all forms of government. For that reason, the State has an interest in every divorce suit, and the marital relation, once established, continues until the marriage contract is dissolved upon some ground prescribed by the statute. The law presumes that when parties enter into the banns of matrimony they do so with a full realization of the frailties of human nature and with full recognition of their duty of mutual forbearance of the faults of each other.

The decree will be affirmed.