PHILLIPS v. PHILLIPS.

Opinion delivered September 22, 1930.

*Nance & Anderson* and *John Mayes,* for appellant.
*Combs & Johnson* and *Earl Blansett,* for appellee.

MEHAFFY, J. Wood Phillips, appellee, commenced this suit to annul the marriage contract entered into with appellant, Crete Phillips, alleging that he was forced to marry her by threats and duress. The appellee is 48 years old, and the appellant is 35 years old. They had been acquainted more than twenty years. When the appellant was about 16 years of age, she married Jasper Culwell and one child was born to them, a girl, who is

now about 13 years of age. The appellee during all this time was a married man, and the father of three children. Soon after the appellant and Culwell were married, appellee began to have illicit relations with appellant, and this continued up to the time of the marriage of appellant and appellee. This relation between appellee and appellant brought about a separation and divorce of appellant from her first husband, and she thereafter married J. W. Hensley. During the time appellant lived with Hensley the illicit intercourse between appellee and appellant continued, and this brought about a separation and divorce from her second husband. After appellant married Hensley, she lived in Conway, Arkansas, and appellee wired her to come back to her home, which was near where he lived, and she came back. Appellee's wife died on September 29, 1929, her death being caused by cancer, from which she had suffered a long while. The illicit intercourse between appellee and appellant continued during the sickness of appellee's wife. Appellee's wife died on Sunday, was buried on Monday, and on the following Thursday appellee and appellant went to Eureka Springs and were married. They met at Hindsville, according to agreement, and drove to Eureka Springs, procured license, and were married by a justice of the peace, then went back home.

Appellee contends and testified that appellant threatened to kill him or do him bodily harm, and also threatened that her brothers intended to do him harm and blow up their houses unless he married her, and that it was these threats and the fear caused by them that induced him to marry appellant, and that but for this he would not have married her. He admits, however, that the illicit relationship with appellee and himself began when she was very young, shortly after she married the first time, and continued up to the time of their marriage at Eureka Springs. The undisputed evidence shows that they agreed to keep the marriage secret because of the

unfavorable comment a marriage entered into so shortly after the death of his wife would cause. About one hundred citizens met and told the parties, appellant and appellee, that they should not live together in that community, and these citizens sought to have appellee convey his property to his three children. Appellant refused to sign the deed. The parties then concluded to leave the community for a while and go to California. They went as far as Locust Grove, Oklahoma, where they spent the night together, and then decided to return to their home. Appellee testified that he talked appellant into coming back; she thought they had better stay away from the community. They lived together secretly after their marriage for 23 days.

The evidence as to when the illicit intercourse between them began, and as to its continuing up to the time of their marriage, is undisputed. The only conflict in the testimony is as to the threats and duress. The appellant testified that there were no threats, and that appellee married her of his own free will. There is some slight corroboration of appellee's testimony as to threats, but we think his own testimony disproved his contention that he was forced to marry appellant. The chancellor found that the testimony tending to prove duress preponderated in favor of the plaintiff, and that the coercion or threats of defendant continued up until the time of the suit, but he also found that the evidence of duress and coercion was weak, and that, standing alone it would not be sufficient ground to annul the marriage contract. He held, however, that society is interested in every marriage contract, and that the children of the plaintiff are a part of this society and have an interest in the result of the lawsuit, which should be protected by the court. He also held that neither the plaintiff nor defendant had any standing in a court of equity, and that, if their rights alone were to be considered, the court would dismiss the case, but that society as a whole, and especially plaintiff's

children, would suffer or be benefited by the action of the court, and that to hold the contract valid would be giving the court's acquiescence to such conduct. He also held that if the marriage contract were annulled, society would be protected from such a morbid and unusual contract and entered a decree annulling the marriage contract.

We agree with the chancellor that the evidence tending to show duress and coercion is weak and not sufficient to justify the court in annulling the marriage contract.

"Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proof, the law raises a strong presumption of its legality; not only casting the burden of the proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. So that it cannot be applied like ordinary questions of fact, which are independent of this sort of presumption." *Estes* v. *Merrill,* 121 Ark. 361, 181 Ark. 136.

In this case, while the appellee testified that he was induced to marry appellant by threats of bodily harm and blowing up his property, he also testified to the illicit relation with appellee extending over a number of years; that they met by agreement at Hindsville and went to Eureka Springs and were married. They came back together and lived as husband and wife. That, because of the threatening attitude of the people and the fear that they would be harmed if they remained in the community, they concluded to go away for a few days. They were intending to go to California and went as far as Locust Grove, Oklahoma. There appellee talked her into coming back home. She did not want to come back. It appears that he was not only not afraid of her, but that she came back because he wanted to come back. According

to appellee's story, he was between Scylla and Charybdis, afraid her brothers would blow up his property and do him bodily harm if he did not marry her immediately, and afraid the citizens would run him out of the country if he did marry immediately after the death of his wife. They therefore agreed to keep their marriage secret for a while, and nothing was said by him about having the marriage annulled until about 100 citizens met and notified them that they could not live together in that community. On the night before these citizens met, appellee stayed with appellant, occupying the same room and bed. We therefore think the court was clearly right in holding that the evidence was insufficient to justify a decree annulling the marriage.

The statute under which this suit was brought reads as follows: "When either of the parties to a marriage shall be incapable from want of age or understanding, of consenting to any marriage, or shall be incapable from physical causes of entering into the marriage state, or where the consent of either party shall have been obtained by force or fraud, the marriage shall be void from the time its nullity shall be declared by a court of competent jurisdiction." Crawford & Moses' Digest, § 7041.

The subjects of marriage, divorce and annulment are regulated by statute, and no divorce can be granted for any cause other than those specified in the statute, and no decree of annulment can be had except for the causes mentioned in the statute.

"Marriage was instituted for the good of society, and the marital relation is the foundation of all forms of government. For that reason the State has an interest in every divorce suit, and the marital relation once established continues until the marriage contract is dissolved upon some ground prescribed by the statute." *Marshak* v. *Marshak,* 115 Ark. 51, 170 S. W. 567; 14 Cyc. 577; *Ib.* 593; 7 Enc. P. & P., p. 70.

Again it is said: "It is generally conceded in all jurisdictions that public policy, good morals and the in-

terests of . society require that the marriage relation should be surrounded with every safeguard and its severance allowed only in the manner and for the causes prescribed by law." *Vanness* v. *Vanness,* 128 Ark. 543, 194 S. W. 498; 14 Cyc. 578.

The chancellor found that the appellee was not entitled to a decree under the statute, that the evidence was too weak to justify a decree on the ground of force or fraud. The court was without authority, as we have already said, to grant a decree for any cause other than the cause mentioned in the statute. The decree is therefore reversed, and the cause remanded with directions to dismiss appellee's complaint.