WITHERINGTON *v.* WITHERINGTON.

4-6040 141 S. W. 2d 30

Opinion delivered June 10, 1940.

*Cecil B. Nance,* for appellant.

HUMPHREYS, J. This suit was brought in the chancery court of Crittenden county, Arkansas, on December 5, 1939, by John C. Witherington, Sr., as next friend for John C. (J.) Witherington, Jr., against Marie Carter (Witherington) to annul a marriage contract entered into between John C. (J.) Witherington, Jr., and Marie Carter Witherington on the 25th day of November, 1938, on the alleged ground and for the alleged reason that John C. (J.) Witherington, Jr., was only eighteen years of age at the time he procured a license to marry from the county clerk of Crittenden county and on the date he married without the knowledge of John C. Witherington, Sr., the father of John C. (J.) Witherington, Jr., and without first obtaining the consent of his father to marry Marie Carter (Witherington).

Marie Carter (Witherington) entered her appearance and the cause proceeded to a trial on the 28th day of February, 1940, upon the complaint, and the depositions of John C. Witherington, Sr., and Mrs. John C. Witherington, Sr., resulting in a dismissal of the complaint over the objection and exception of appellant,

from which decree an appeal has been duly prosecuted to this court.

There is no dispute in the testimony reflected by the record. The undisputed facts are as follows: John C. Witherington, Sr., is the father of John C. (J.) Witherington, Jr. John C. (J.) Witherington, Jr., in company with Marie Carter, both of whom resided in Tennessee, were married before a justice of the peace on the 25th day of November, 1938, in Crittenden county, Arkansas. A license for them to marry was issued by the deputy county clerk of said county in which it was recited that John C. (J.) Witherington, Jr., was twenty-two years old and Miss Marie Carter was nineteen years old. John C. (J.) Witherington, Jr., was over eighteen years of age at the time they procured the license, but he misstated his age to the deputy clerk as twenty-two years. John C. Witherington, Sr., and Mrs. John C. Witherington, Sr., both testified that they did not know of the marriage of their son to Marie Carter until about a year after the marriage, and that this suit was brought within a few days after they obtained that information. They both testified that they did not give their consent for their son to marry Marie Carter and John C. Witherington, Sr., testified that had he been requested for permission for his son to marry he would not have given it and that he desired for the marriage contract to be annulled because his son was too young to be married, and that it would be impossible for him to get an education and support his wife.

Section 9017 of Pope's Digest is as follows: "Every male who shall have arrived at the full age of seventeen years, and every female who shall have arrived at the age of fourteen years, shall be capable in law of contracting marriage; if under those ages, their marriages are void."

It was ruled by this court in the case of *Kibler* v. *Kibler*, 180 Ark. 1152, 24 S. W. 2d 867, that the word "void" as used in this statute means "voidable". The reason the word "void" was construed to mean "void-

able'' was because the court read the above section in connection with § 9021 of Pope's Digest which is as follows: "When either of the parties to a marriage shall be incapable, from want of age or understanding, of consenting to any marriage, or shall be incapable from physical causes of entering into the marriage state, or where the consent of either party shall have been obtained by force or fraud, the marriage shall be void from the time its nullity shall be declared by a court of competent jurisdiction."

In construing the section just quoted this court said in the case of *Phillips* v. *Phillips*, 182 Ark. 206, 31 S. W. 2d 134, that: "The subjects of marriage, divorce and annullment are regulated by statute, and no divorce can be granted for any cause other than those specified in the statute, and no decree of annullment can be had except for the causes mentioned in the statute.

" 'Marriage was instituted for the good of society, and the marital relation is the foundation of all forms of government. For that reason the State has an interest in every divorce suit, and the marital relation once established continues until the marriage contract is dissolved upon some ground prescribed by the statute.' *Marshak* v. *Marshak*, 115 Ark. 51, 170 S. W. 567, L. R. A. 1915E, 161 Ann. Cas. 1916E, 206; 14 Cyc. 577; Ib. 593; 7 Enc. P. & P., p. 70.

"Again it is said: 'It is generally conceded in all jurisdictions that public policy, good morals and the interests of society require that the marriage relation should be surrounded with every safeguard and its severance allowed only in the manner and for the causes prescribed by law.' *Vanness* v. *Vanness*, 128 Ark. 543, 194 S. W. 498; 14 Cyc. 578."

Appellant contends that he is entitled to an annulment of the marriage contract in question under § 9044 of Pope's Digest, which is as follows: "Any person applying for the license to marry another may introduce the parent or guardian of himself or the other party, or the certificate of such parent or guardian duly attested

to prove to the satisfaction of the clerk that the parties to such marriage are of lawful age, and in case the parties to such marriage (either or both) are not of lawful age it shall be the duty of the clerk before issuing the license to require the party applying therefor to produce satisfactory evidence of the consent and willingness of the parent or guardian of such party or parties to such marriage, which shall consist in either verbal or written consent thereto, and if there be any doubts in the mind of the clerk as to the evidence of the consent and willingness of the parent or guardian of the party or parties applying for the license, or if he is in doubt as to the true age or ages of the party or parties so making application, he may require the parties to make affidavit to the genuineness of the consent granted or to the correctness of the age or ages given, and the affidavit so made shall be filed in his office for public inspection.''

It will be observed that the Act referred to does not provide that a marriage contract between girls over fourteen years of age and boys over seventeen years of age may be annulled because the contracting parties did not first obtain permission from their parents or guardians to marry. Section 9044 of Pope's Digest was passed for the protection of county clerks and has nothing whatever to do with the annullment of marriages for failure to first obtain consent from their parents or guardians to marry. Of course, marriages between girls under fourteen and boys under seventeen could be annulled, but it is because such marriages are absolutely void.

No error appearing, the decree is affirmed.

Smith, J., dissents.

SMITH, J. (dissenting). Under the majority opinion a boy of 17 or a girl of 14 may marry without the knowledge or consent of the parents or guardians, and the parents or guardians are powerless to do anything about it. This, in my opinion, was not the intention of the lawmakers as evidenced by the statutes of this state, and I, therefore, dissent.

With reference to age, Who may marry in this state? Any male 21 years of age, or over, or any female 18 years of age, or over. These persons do not require the consent of any one except themselves. Who may not contract marriage? Boys under 17 and girls under 14. These may not marry even with the consent of parent or guardian. Between the ages of 17 and 21, a boy may marry provided his parent or guardian consents. Between the ages of 14 and 17 a girl may marry provided her parent or guardian consents. Between the ages of 17 and 21 of the boy, and the ages of 14 and 17 of the girl the assent of parent or guardian is as essential as is the assent of the boy or the girl, at least that is what the statute provides, as I shall presently show.

Section 9016, Pope's Digest, the first section of the chapter on Marriages, provides that "Marriage is considered in law a civil contract, to which the consent of the parties, capable in law of contracting, is necessary."

With certain exceptions, all contracts of minors are voidable, because they are deemed incapable of contracting. It is as much the purpose of the law to protect minors from improvident marriage contracts as it is to protect them from other improvident contracts. And what is that protection? The law requires that the minor boy or girl shall first obtain the consent of parent or guardian, because he or she is not deemed capable of assuming this most solemn and important of all human contracts without the consent of his or her parent or guardian.

The majority quote § 9044, Pope's Digest, which provides how minors may obtain licenses to marry, but, in my opinion, they give it no effect when it is held that minors may contract a valid marriage without compliance with its provision. This section provides that ". . . it shall be the duty of the clerk before issuing the license (when he is in doubt as to the ages of all parties applying for license) to require the party applying therefor to produce satisfactory evidence of the consent and willingness of the parent or guardian of such party or parties to such marriage, . . ."

Why impose this requirement if its enforcement is unimportant?. What purpose will it serve if not enforced? Why have such a law at all? The answer to this last question must be—unless the language quoted is a mere assemblage of meaningless words—that the law does not permit minors to contract a marriage unless the parent or guardian also consents.

Section 9021, Pope's Digest, provides: ''When either of the parties (not both) to a marriage shall be incapable, from want of age or understanding, of consenting to any marriage, . . ., the marriage shall be void from the time its nullity shall be declared by a court of competent jurisdiction.''

There is a wise presumption of law in favor of the validity of any marriage, and the marriage of minors is not void but is voidable. The parent or guardian must object immediately after being apprised that an unauthorized marriage has been consummated, otherwise they will be presumed to have consented, and the marriage is not to be annulled until and unless the parent or guardian disaffirms the marriage. The proof here is that suit to annul this marriage was brought four days after the boy's parents were apprised of his marriage.

In the case of *Bickley* v. *Carter,* 190 Ark. 501, 79 S. W. 2d 436, we annulled a marriage upon the ground that the female was intoxicated to the extent that she was incapable of consenting; but this relief was granted upon the showing that the parties had not cohabited together after the marriage. Had they done so, the contract of marriage would have been ratified and would thereafter have been valid.

But does the parent or guardian have the right to disaffirm an unauthorized marriage of child or ward? The case of *Kibler* v. *Kibler,* 180 Ark. 1152, 24 S. W. 2d 867, answers that question.

There, a minor 16 years of age married a girl of about his own age under threat of prosecution for seduction if he did not marry her. A divorce was denied on that account, but it was granted at the suit of his mother on account of his age. It was there said: ''This suit

was therefore properly brought by the mother of the boy as his natural guardian and next friend, . . ."

In that case a child born of the marriage, although the marriage was annulled, was declared legitimate, because it is provided in § 3475, Crawford & Moses' Digest (§ 4342, Pope's Digest) that "The issue of all marriages deemed null in law, or dissolved by divorce, shall. be deemed and considered as legitimate."

Section 9039, Pope's Digest, provides that "All persons hereafter contracting marriage in this state are required to first obtain a license from the clerk of the county court of some county in this state." A marriage license is, therefore, essential to a valid marriage in this state, and the statute hereinabove quoted requires the consent of parent or guardian before a license may be issued to a boy under 21 or a girl under 18.

If we refuse to give effect to and to enforce these mandatory statutory provisions, the result must be that any boy over 17 or any girl over 14 may contract a marriage which the parent or guardian cannot annul if there was found a county clerk, or a deputy, whose willingness to earn the fee allowed by law for issuing a marriage license induced him to accept as true the affidavit of the parties as to their ages, although he may know the affidavit is false. In the instant case it does not appear that even an affidavit was made.

We quoted with approval in the Kibler case, *supra,* a statement of the law from § 33 of the chapter on Divorce and Separation in 9 R. C. L., to the effect that an infant is not concluded by false representations of his age so as to bind himself by false representations of his age, and that ". . . an infant incapable for want of age of entering into a valid marriage is incapable also of estopping himself by a fraudulent declaration of his age from asserting its invalidity in an action to annul it,. . . ."

The majority say that a marriage will be annulled only upon the ground authorized by statute. Section 9021, Pope's Digest, from which we have already quoted, provides that a marriage may be annulled when either of the parties is incapable, from want of age, of con-

senting to the marriage. For the reasons stated, young Witherington was incapable of consenting to the marriage, and it should be annulled at the suit of his parent unless we are to discard the provisions of the law intended to prevent secret marriages of impetuous minors.

In the case of *Cox* v. *State,* 164 Ark. 126, 261 S. W. 303, a youth of 20 made affidavit that the girl he proposed to marry was 18, when, in fact, she was only 14 years of age. He made affidavit to that effect, and was convicted under an indictment charging him with the crime of perjury, and we affirmed the sentence. One of the principal arguments made in that case was that the false affidavit was immaterial and could not, therefore, be the subject of perjury. We held, however, that the false statement as to the girl's age was material, and it was material because there was no authority in the law for the issuance of a license to marry a girl under 18 years of age in the absence of the consent of the parent or guardian of the girl.

The provisions of our statute herein referred to are wise and are mandatory, and should be enforced, and the relief here prayed by the father of young Witherington should be granted. I, therefore, dissent.