MITCHELL *v.* MITCHELL.

4-9510                                      239 S. W. 2d 748

Opinion delivered May 28, 1951.

*Cecil E. Johnson, Jr.,* for appellant.

ROBINSON, J. On the 10th day of October, 1950, a complaint styled "William Frank Mitchell, in his own right and by his father L. B. Mitchell, as next friend, and individually, v. Bobby Jean Warren Mitchell" was filed in the Chancery Court. The complaint alleged that on the 4th day of October, 1950, William Frank Mitchell and Bobby Jean Mitchell were joined in marriage; that William Frank Mitchell was 18 years of age at the time; that he did not obtain the consent of his parents to the said marriage; and asked that the marriage be annulled. The case was tried on the 20th day of November, 1950. Neither William Frank Mitchell nor Bobby Jean Mitchell appeared as witnesses. The Chancellor denied the petition for annulment. § 55-102, Ark. Stats., provides:

"Every male who shall have arrived at the full age of 18 years, and every female who shall have arrived at the full age of 16 years, shall be capable in law of contracting marriage; if under those ages their marriage shall be absolutely void.

"Provided that males under the age of 21 years and females under the age of 18 years shall furnish the clerk, before the marriage license can be issued, satisfactory evidence of the consent of the parent or parents or guardian to such marriage, and, in all cases where the consent of the parent or parents or guardian is not provided or there shall have been a misrepresentation of age by a contracting party, such marriage contract may

be set aside and annulled upon the application of the parent or parents or guardian to the Chancery Court having jurisdiction of the cause." * * *

The only evidence in the record as to the age of Bobby Jean Mitchell is the marriage license which gives her age as 19. In any event, she is probably of legal age as no guardian *ad litem* was appointed to defend for her. The undisputed evidence is that William Frank Mitchell was 19 years of age at the time of the marriage. Therefore, the marriage is not void but may be annulled. The Statute provides: "Such marriage contract *may* be set aside and annulled upon application of the parent or parents, or guardian." The word "may" as used in the Statute does not mean "shall," but gives the court some discretion in the matter. *Mo. Pac. R. R. Co.* v. *Fish,* 181 Ark. 863, 28 S. W. 2d 333; *Smith* v. *John Hancock Mutual Life Ins. Co.,* 195 Ark. 699, 114 S. W. 2d 15.

In other words, the Statute gives to the parents the right to petition the court to annul the marriage and provides that the court *may* grant the petition. If it were the intention of the Legislature that the Chancellor should have no discretion in the matter, but would be compelled to grant the petition on application of the parent, parents or guardian, in all probability, the Statute would have been framed to read: "Such marriage contract shall be set aside and annulled upon application of the parent, or parents, or guardian." But such is not the case. The Statute provides that the marriage contract *may* be set aside upon such application. To hold that the Chancellor is required by law to grant the annulment on application of a parent or guardian and has no discretion in the matter, we would have to read something into the Statute that is not there, which would be changing the plain meaning of the Act. If the Chancellor had no discretion in the matter, one parent could have the marriage annulled, regardless of the injustice and hardship that might be caused by such annulment, and regardless of the fact that both parties to the marriage and three of the parents might vigorously protest the annulment.

In the case of *Keith* v. *Pack*, 182 Tenn. 420, 187 S. W. 2d 618, 159 A. L. R. 101, the Supreme Court of Tennessee had occasion to construe a similar Statute and there said: "It will have been observed that § 1 of the Act from which we first above quoted provides that a marriage, either of the parties being under 16 years of age, 'may be annulled upon proper proceedings'. The use of the word *may* obviously commits to the court a certain discretion as to the annulment of such marriages. The provision is not imperative. If it were, it could not be reconciled with § 6. The marriage is valid until set aside by the court." Likewise, in the case at bar, as provided by the first paragraph of the Arkansas Statute above quoted, the marriage is valid until such time as it is annulled by the court.

William Frank Mitchell will be 21 years of age before November 20th of this year. Neither he nor his wife, Bobby Jean Mitchell, was called as a witness in this case, and we cannot say that the Chancellor abused his discretion by not rendering a decree annulling the marriage.

Affirmed.

WARD, J., concurs; MILLWEE and GEORGE ROSE SMITH, JJ., dissent.

GEORGE ROSE SMITH, J., dissenting. I think the majority misconceive the purpose of § 55-102, which was enacted in 1941. The earlier statute, § 9044 of Pope's Digest, required parental consent to a minor's marriage but did not expressly permit the parent to bring an action for annulment when the consent had not been given. In *Witherington* v. *Witherington*, 200 Ark. 802, 141 S. W. 2d 30, the majority held that a nonconsenting parent could not bring an action to annul the marriage. Judge Frank G. Smith wrote a vigorous dissent in which he said: "If we refuse to give effect to and to enforce these mandatory statutory provisions, the result must be that any boy over 17 or any girl over 14 may contract a marriage which the parent or guardian cannot annul if there was found a county clerk, or a deputy, whose willing-

ness to earn the fee allowed by law for issuing a marriage license induced him to accept as true the affidavit of the parties as to their ages, although he may know the affidavit is false. . . . For the reasons stated, young Witherington was incapable of consenting to the marriage, and it should be annulled at the suit of his parent unless we are to discard the provisions of the law intended to prevent secret marriages of impetuous minors."

The Witherington case was decided in 1940, and the present statute was passed at the next session of the legislature. The statute was evidently intended to make Judge Smith's dissenting opinion the law. See Friday, "Nonage Marriages in Arkansas," 1 Ark. L. Rev. 55. And this change in the law is entirely logical. Ordinarily a minor's contracts are voidable, but the legislature has seen fit to permit a minor to enter into a binding marriage contract with the consent of his parents. If the parents do not have a right to have the marriage annulled when it was performed without their consent, then, as Judge Smith pointed out, the requirement of consent is meaningless in most cases.

But, say the majority, the present statute uses the permissive word "may." True, but it seems plain to me that the discretion lies with the parents and not with the court. The parents may ratify the marriage if they chose to, or they may seek its annulment. The legislature evidently thought that the parents, who have known their child all his life, are best fitted to decide whether he is sufficiently mature to enter into a contract so important as marriage. Here the chancellor did not even see these two young people in the courtroom, but he is nevertheless permitted to overrule the parents' judgment in the matter. Had the legislature intended for the chancellor's discretion to govern I think they would have required the chancellor to approve underage marriages in the first instance. But it is the parents' consent which is required, and I am not convinced that the legislature meant to give the chancellor the power to ratify a marriage which he could not have authorized before the ceremony took place.