KROHN v. KROHN.

4-9966                                      254 S. W. 2d 453

Opinion delivered February 2, 1953.

*Glenn F. Walther,* for appellant.

*Arthur G. Frankel,* for appellee.

GRIFFIN SMITH, Chief Justice. Arthur S. Krohn's divorce action was dismissed, as was his wife's cross-complaint asking for maintenance money during separation.

The parties were married in 1921 and have two children, each being of legal age. Appellant at times lives with her married son who is a disabled veteran. The son has been told by physicians that amputation of an injured leg is necessary. Sometimes the son sends small monetary gifts to his mother, but the necessities incidental to his own household and the support of a wife and three children forbid material assistance.

In 1947 appellee filed divorce actions in Arkansas and in Illinois. He and appellant had been residents of Illinois for more than 25 years, but in the fall of 1949 they moved to Memphis, Tenn. Thereafter appellee, who was the cross-defendant in this action, again sought to establish a residence in Arkansas for divorce purposes. Krohn readily admitted that he came to Arkansas in 1947—the same year he attempted to procure a divorce in Illinois—but this suit, like the one in Illinois, was dismissed and he "returned" to Illinois. Appellant testified that at the time the proceedings in Illinois were dismissed her husband had agreed to pay separation maintenance on the basis of $80 per month, but the promise was not kept. Illinois residence property ill-suited to habitation was the only realty owned by either. Its value was not in excess of $550.

From Memphis appellee again came to Arkansas. This step was taken in 1950, but in the meantime he had worked as a rural mail carrier in Illinois, an employment

resulting in certain retirement or death benefits. In the event of Krohn's death a lump-sum would be paid to his wife. He intimated that because of this prospect Mrs. Krohn was resisting divorce.

When appellee came to Arkansas from Memphis in 1950 he procured employment as a taxicab driver at an average net weekly wage of $30, and he again undertook to gain matrimonial freedom. Mrs. Krohn came to Little Rock, met her husband, and the two spent a night together at a tourist court. There is testimony supporting inferences that Mrs. Krohn was advised to do this in order to meet her husband's accusations with evidence showing condonation. It appears that Mrs. Krohn had agreed not to mention the circumstances for the reason that her husband might be subject to indictment for perjury on testimony given in support of his divorce action. In any event the cause was dismissed. The chancellor summarized these maneuvers in the following comment from the bench: (Addressing appellant's counsel who had just said that Krohn admitted he made a false statement)—''Yes and I dismissed the case on account of it, but that is water over the dam. I thought it was about fifty-fifty: she lied to [her husband] about not telling it, and he lied to the court about not doing it.''

The proceeding resulting in this appeal was initiated in 1951. The complaint alleged that the Krohns had lived together until September 28 of that year. Abuse, an attitude of contempt and studied negligence systematically and habitually pursued, were alleged. The answer and a categorical denial and cross-complaint charged desertion, abuse, etc., but asked that the suit be dismissed with appropriate directions for separate maintenance.

There is documented testimony strongly indicating that appellee had for a number of years been associating with a woman to whom he was engaged prior to his marriage to appellant in 1921. Letters bearing expressions of endearment disclose mutual affections substantially greater than a Platonic relationship, but the evidence as a whole follows the familiar pattern of accusation and denial.

Our view is that the chancellor felt that the parties were without equity because of the misrepresentations each had made. Appellant would distinguish in degree by calling attention to the fact that her assurances that certain matters would not be revealed were not made under oath, while appellee's false testimony was given in court.

We conclude that the chancellor did not abuse his discretion in declining to aid either, hence the decree is affirmed.