WELCH *v.* WELCH.

5-692                                    282 S. W. 2d 600

Opinion delivered October 10, 1955.

*Surrey E. Gilliam* and *Melvin E. Mayfield,* for appellant.

*Harry C. Steinberg,* for appellee.

WARD, J. We are concerned here with when and under what circumstances a wife is entitled to (a) maintenance and (b) an attorney fee in a divorce proceeding instituted by her husband.

*Pleadings.* On November 20, 1953 appellee, Grady Welch, filed a petition for divorce against appellant, his wife, alleging indignities in that she continually fussed and argued, displayed ill temper because he would not continually take her to spend most of her time at her parents' home, and finally deliberately left his home and went to her parents.

On December 3, 1953, appellant filed a motion for attorney fees, suit money and alimony, stating: She had no estate or money to employ counsel to defend the

action or to pay court costs and other expenses, and that appellee was earning about $300 per month. She asked for $25 a week as temporary alimony and an attorney fee.

On July 1, 1954, appellant filed an answer to the divorce suit, without waiving the motion she filed on December 3, 1953, consisting of a general denial and also an allegation that her husband ordered her to leave home and refused to allow her to return, and prayed for separate maintenance.

On July 8, 1954, on his own motion, appellee's petition for divorce was dismissed without prejudice, and on December 8, 1954 [the day of the hearing] he filed a general denial to appellant's petition for separate maintenance.

*Testimony.* The testimony, in substance, shows: The parties were married October 1, 1953 and separated five or six weeks later. Shortly before they were married appellee's mother died, and upon being married they went to the home of appellee's father to live with him. At the time of the marriage appellant's mother was sick. Appellant says her mother was "real sick," and in the worst stage of diabetes, that she tried to get the wedding postponed but appellee promised to take her once a week (on Sundays) to visit her mother who lived at Smackover—a distance of some 20 miles. During the few weeks they lived together appellee took appellant to see her mother each Sunday, except on one occasion when she voluntarily stayed at home for a family reunion.

Although there was some friction between appellant and her father-in-law over cooking and housekeeping, it seems that the only cause of trouble in the marriage relations was the matter of appellant making weekly visits to her sick mother.

The first difficulty arose three weeks after the marraige when, after returning home from a Sunday visit, appellee told his wife (she says) that he was going to quit taking her to see her mother. This apparently made appellant angry for she left for two or three days but

then returned to her husband. A similar incident occurred after again living together two or three weeks. Appellant says that when they got home (from a visit to her mother) she went to her room when appellee walked in and said: "Ruby, I want you to leave. I can't see any way for us to get along." Thereupon her husband and his father took her, together with her clothes, to her mother's home. Appellant later made an effort to effect a reconciliation and she says she is now willing to resume marital relations, but appellee refused and still refuses to do so.

Appellee's version of the final separation varies only slightly from that of his wife. He says she took offense (at her mother's home) when he wanted to leave in time to do the chores at his home, and that she didn't say a word on the way back; that when they arrived he asked her if she was going to cook supper and she replied: "No, I am not cooking supper on Sunday evening"; that later he went into the bedroom where she was and said: "Ruby, don't look like we can get along, you won't even try to cooperate. If you want to go and stay with your mother, go on up there and stay"; that she said: "Will you carry me tonight" and he said "I sure will." Appellee admits that the only difference they had was about going to her mother's. He filed suit for divorce five days after the separation. Other witnesses testified in corroboration of many of the facts above set forth but not as to what transpired at the time of the final separation.

Appellee works for the Union County Highway Department for $10 a day when the weather permits. He owns no property but has about $200 in the bank. He had an operation in the summer of 1954 and wasn't able to work for four months. Appellant has worked at odd jobs before and after her marriage but, as the result of an old back injury, is unable to do work that requires her to stand, and she has no money or property.

After hearing the testimony the Chancellor dismissed appellant's petition for separate maintenance and refused to allow her an attorney fee. He apparently

took the view that she had not met the burden of proving her husband caused her to leave his home or refused to let her remain there, and, particularly, that her testimony was not corroborated.

Appellee contends that the Chancellor's finding should be sustained under the well known rule that it will stand unless against the weight of the evidence. However, we are of the opinion that this is a case where the rule is not controlling, and that the decree must be reversed.

(a) *Separate Maintenance.* Appellant's suit for separate maintenance, unlike a suit for divorce, does not necessarily require corroborating testimony. See *Wood* v. *Wood,* 140 Ark. 361, 215 S. W. 681. Where, as here, the husband files for a divorce and the wife asks for separate maintenance, it is not necessary for the wife to show merit. See *Jelks* v. *Jelks,* 207 Ark. 475, 181 S. W. 2d 235.

In order for appellant to be entitled to maintenance here it was not incumbent upon her to show appellee forced her to leave. On the other hand, before appellee could defeat her claim it was incumbent on him to show either that she deserted him without just or reasonable cause or that he left her for such cause. Reasonable cause was defined in *Rie* v. *Rie,* 34 Ark. 37, at page 41, in this language:

"It has been held, subject to some qualifications, that *reasonable cause,* which, within the divorce statutes, will justify one of the married parties in abandoning the other, must be such conduct as could be made the foundation of a judicial proceeding for divorce."

In *Bonner* v. *Bonner,* 204 Ark. 1006, 166 S. W. 2d 254, this court said:

"It was and is the duty of appellant to support his wife according to the station in which they live. This duty would not rest upon him if he were entitled to a divorce, but it does rest upon him as long as they are married unless she had abandoned him without just

cause. He is as much to blame as she for the separation, and it is his bounden duty to support her as long as the bonds of matrimony exist between them.''

The record does not support the conclusion that appellant abandoned appellee without good cause, but rather that both were at fault: In fact any abandonment on the part of appellant was nullified when she offered to return to her husband. Likewise appellee failed to show that he quit living with appellant for reasonable cause as defined in the *Rie* case, supra. Apparently he thought no such cause existed because he dismissed his action for divorce.

Based upon the above applicable rules and the testimony in this case we conclude that the appellant should have been granted separate maintenance in this case in the amount later mentioned.

(b) *Attorney fee.* The Chancellor should also have allowed a fee for appellant's attorney. As shown by the record appellee first filed a suit for divorce. Then appellant filed a motion for attorney fee stating that she had no money with which to employ counsel and later counsel was employed and she filed an answer to the divorce suit. Since there was no showing that appellant had either money or property she was thereupon entitled to money with which to employ counsel. In the early case of *Glenn* v. *Glenn,* 44 Ark. 46, this court said: ''In the absence of any proof of separate property in a wife, it is just and reasonable to compel the husband to furnish the wife with means to defend a suit by him for divorce. Otherwise she would be at his mercy.'' This rule was cited with approval in the case of *Slocum* v. *Slocum,* 86 Ark. 469, 111 S. W. 806, and in subsequent cases.

*Allowances.* We realize that the trial judge is ordinarily in a better position to ascertain the needs of appellant and the ability of appellee to pay than we are, but we also realize that appellant has been denied assistance for several months and that she might be denied assistance for some time in the future if we did not as-

sume this responsibility. Appellant asked the trial court for $25 a week for maintenance but we do not feel that the record justifies us in making an award in that amount. Based on what the record shows regarding appellee's financial status and his earnings we have concluded that he should pay to his wife the sum of $10 each week, beginning October 1, 1955. Based on the record we have concluded that appellee should pay $50 for her attorney's fee in the trial court and $50 for his fee in this court and that he should pay the cost in this court and the court below.

Accordingly the decree of the trial court is reversed with directions to enter judgment for appellant in accordance with this opinion.