James B. HATCHER *v.* Sue Guyant HATCHER

78-295                                                     580 S.W. 2d 475

Opinion delivered May 7, 1979
(In Banc)

*Coleman, Gantt, Ramsay & Cox,* for appellant.

*Baim, Baim, Gunti, Mouser & Bryant,* for appellee.

DARRELL HICKMAN, Justice. The Jefferson County Chancery Court granted the appellee, Sue Guyant Hatcher, temporary maintenance and attorney fees in a divorce action. The appellant, James B. Hatcher, objected to the court's order, arguing that Ark. Stat. Ann. § 34-1210 (Repl. 1962) which authorizes such an award violates the equal protection clauses of the United States and Arkansas Constitutions in

that it granted rights to temporary alimony, maintenance and attorney fees only to women and not to men. See U.S. Const. Amend. XIV, and Ark. Const. Art. 2, § 3.

The appellant raises on appeal from the temporary order the constitutional issue as well as whether the court's award was excessive.

Mrs. Hatcher was awarded $3,200.00 per month as "temporary support and maintenance," and a $1,500.00 temporary attorney's fee. There was no breakdown of how much was allotted as temporary alimony, and how much as support, if any, for the minor child. The order also provided that the appellant was to pay all medical, dental and drug bills incurred by the appellee and her son, Lynn Brady Guyant. (The minor son is by a prior marriage of Mrs. Hatcher. However, she alleged that the appellant was responsible for his support.) The appellee was given temporary possession of a Mark V automobile and their home. It was not disputed that the appellant's adjusted gross income for 1977 was $274,000.00.

Since the trial court entered its order, the United States Supreme Court has issued a decision which we consider controlling and which requires us to declare that the law in question is unconstitutional. In *Orr v. Orr*, 47 U.S.L.W. 4224 (March 5, 1979), the United States Supreme Court declared a similar Alabama statute unconstitutional.[1]

---

[1]The Alabama statutes in question provided:

Ala. Code, Title 30.

§ 30-2-51. If the wife has no separate estate or if it be insufficient for her maintenance, the judge, upon granting a divorce, at his discretion, may order to the wife an allowance out of the estate of the husband, taking into consideration the value thereof and the conditions of his family.

§ 30-2-52. If the divorce is in favor of the wife for the misconduct of the husband, the judge trying the case shall have the right to make an allowance to the wife out of the husband's estate, or not make her an allowance as the circumstances of the case may justify, and if an allowance is made, it must be as liberal as the estate of the husband will permit, regard being had to the condition of his family and to all the circumstances of the case.

§ 30-2-53. If the divorce is in favor of the husband for the misconduct of the wife, and if the judge in his discretion deems the wife entitled to an allowance, the allowance must be regulated by the ability of the husband and the nature of the misconduct of the wife.

The court applied the following test in determining the constitutionality of the Alabama statute:

> "To withstand scrutiny" under the equal protection clause, " 'classifications by gender must serve important governmental objective and must be substantially related to achievement of those objectives.' "

Several possible governmental objectives that could justify the existence of such a statute were examined by the court. First, allocation of family responsibilities in which the wife plays a dominant role. The court found that this purpose could not now sustain such laws, commenting:

> No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and world of ideas.

Next, the court considered two other possible purposes: (1) "to provide help for needy spouses, using sex as a proxy for need"; and, (2) to compensate "women for past discrimination during marriage" which arguably has left them unprepared to fend for themselves in the working world after a divorce. These two objectives were recognized as legitimate and important governmental objectives. However, the court held that since "individualized hearings at which the parties' relative financial circumstances are considered *already* occur," the gender-based classification was unnecessary and the state's purposes could be effectuated without it. (Emphasis in original.)

More importantly, the court noted that the use of such a gender classification gives "an advantage only to the financially secure wife whose husband is in need."

> Where, as here, the States' compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender-classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex. And this is doubly so where the choice made by the State appears to redound — if only in-

directly — to the benefit of those without need for special solicitude.

*Orr* v. *Orr, supra,* at 4228.

The Arkansas law in question, Ark. Stat. Ann. § 34-1210 (Repl. 1962), is very much like the Alabama law. It reads:

Maintenance and Attorney's Fees Pending Action — Attorney's Fees for Enforcement of Decree. — During the pendency of an action for divorce or alimony, the Court may allow the wife maintenance and a reasonable fee for her attorneys, and enforce the payment of the same by orders and executions and proceedings as in cases of contempt, and the Court may allow additional attorney's fees for the enforcement of payment of alimony, maintenance and support provided for in the decree.

The Arkansas law permits, but does not require, alimony and attorney fees; the Alabama law is identical in that regard. We have held that the allowance of temporary alimony and attorney's fees is within the sound discretion of the court. So long as they are within reasonable limits they will not be disturbed. *Livingston* v. *Livingston,* 247 Ark. 1137, 449 S.W. 2d 386 (1970); *Brabham* v. *Brabham,* 240 Ark. 172, 398 S.W. 2d 514 (1966). In Alabama such an award is based upon all the circumstances of the case. Alabama Code, Title 30 § 30-2-52. The Arkansas law only provides for such relief to the wife with no reference to a reciprocal right for a husband. So does the Alabama law. The fact that the Arkansas law in question only relates to temporary, as opposed to permanent, alimony is not significant. We have even held that a wife is entitled to temporary alimony based upon the sole fact that the husband sued her for divorce. *Kearney* v. *Kearney,* 224 Ark. 585, 274 S.W. 2d 779 (1955). It is not a question of temporary or permanent alimony. It is a question of a gender-based classification of the statute. The same arguments made to justify the Alabama law can be made regarding the Arkansas statute in question.

There is no doubt that the Arkansas law cannot survive application of the principles of the *Orr* case. "A gender-based

classification which, as compared to gender-neutral one, generates additional benefits only for those it has no reason to prefer cannot survive equal protection scrutiny," *Orr* v. *Orr, supra,* at 4228. Therefore, we declare Ark. Stat. Ann. § 34-1210 (Repl. 1962) unconstitutional in violation of the equal protection provisions of the United States and the Arkansas constitutions.

The appellee has argued that we should simply hold that the law applies to both wives and husbands. We have never applied this statute in favor of husbands. When the will of the General Assembly is clearly expressed, we are required to adhere to it without regard to consequences. *Walker* v. *Allred,* 179 Ark. 1104, 20 S.W. 2d 116 (1929). It is not the function of this court to legislate; to do so would be a clear violation of this court's authority. Divorce and the incidental rights, responsibilities and liabilities of a divorce, are purely statutory. *Ex parte Helmert,* 103 Ark. 571, 147 S.W. 1143 (1912); *Ramsey* v. *Ramsey,* 259 Ark. 16, 531 S.W. 2d 28 (1975); *Wheat* v. *Wheat,* 229 Ark. 842, 318 S.W. 2d 793 (1958). We held in *Young* v. *Young,* 207 Ark. 36, 178 S.W. 2d 994 (1944):

> The Legislature — not the courts — determined the grounds for, the defenses against, divorce: Because divorce is always regulated by statute.

Since the *Orr* decision, the Arkansas General Assembly passed, and the Governor of Arkansas signed into law, Act 705 of 1979. It amends Ark. Stat. Ann. § 34-1210 to read:

> During the pendency of an action for divorce or alimony, the court may allow to the wife or to the husband maintenance and a reasonable fee for her or his attorneys, and enforce the payment of the same by orders and executions and proceedings as in cases of contempt, and the court may allow either party additional attorney's fees for the enforcement of payment of alimony, maintenance and support provided for in the decree.

It seems that the General Assembly has addressed, by Act 705, the problems created by *Orr* and although we take judicial knowledge of the Act, we do not rule on its legality nor application since it is not before us. However, as far as

these parties are concerned, it is relevant to their pending divorce case. This matter is remanded for the chancery court to reconsider its order in view of the *Orr* decision, our decision and Act 705.

The United States Supreme Court, in *Orr,* cautioned litigants as to the effect of the *Orr* decision. It may not result in much change. It was pointed out that in Alabama, alimony is sometimes a matter of contract and, therefore, enforceable as a contract between the parties. Arkansas also has recognized this distinction. *Armstrong* v. *Armstrong,* 248 Ark. 835, 454 S.W. 2d 660 (1970). Furthermore, parties who have not raised the constitutional issue in prior proceedings may be precluded from raising it at a later date. *Orr* v. *Orr, supra.*

We do not reach the second argument of the appellant, that the award was excessive, because this matter may be rendered moot at a rehearing. It may be that the order of the trial court, based on the statute declared unconstitutional, can be remedied on a rehearing. Also, this was a temporary and not final adjudication of the rights of the parties.

The appellee also argues that the appellant did not properly appeal from the temporary award of attorney's fees. The record reflects that the appellant appealed from the order entered by the court and that order included attorney fees.

It may be that the *Orr* decision and our decision will at least for a period of time cause some problems to litigants. However, we resist the temptation to rule beyond the issues before us. It is best that any legal problem resulting from *Orr* be addressed by the General Assembly or through our judicial system. We cannot cure all the ills created by such cases, nor should we presume to anticipate them.

Reversed and remanded.

HARRIS, C.J., not participating.

GEORGE ROSE SMITH and FOGLEMAN, JJ., concur in part and dissent in part.

JOHN A. FOGLEMAN, Justice, concurring in part and dis-

senting in part. I concur only in those parts of the majority opinion in which the majority declines to legislate and in which it holds that the case should be remanded to the Chancery Court of Jefferson County for consideration in the light of *Orr v. Orr,* 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979) and Act 705 of 1979.

I do not think that it is appropriate for this court to render a decision invalidating an act of the General Assembly in an abstract consideration of that statute in relation to a decision of the United States Supreme Court invalidating a statute, which could not have had any application to this case at this stage, without a more comprehensive treatment of both our statute [Ark. Stat. Ann. § 34-1210 (Repl. 1962)], which was pertinent to this case, and the background peculiar to this case. The majority properly declines to express itself as to the effect of Act 705 of 1979, leaving this matter to the trial court. We should also let the trial court determine the effect of *Orr* on its decree in the background of the concrete facts. I also suggest that the majority has disregarded the presumption of constitutionality that attends every act of the General Assembly. See *Collins* v. *State,* 261 Ark. 195, 548 S.W. 2d 106, cert. den. 434 U.S. 878, 98 S. Ct. 231, 54 L. Ed. 2d 158 (1977); *Gibbs* v. *State,* 255 Ark. 997, 504 S.W. 2d 719; *Hooker* v. *Parkin,* 235 Ark. 218, 357 S.W. 2d 534; *Neal* v. *Still,* 248 Ark. 1132, 455 S.W. 2d 921; *Hickenbottom* v. *McCain,* 207 Ark. 485, 181 S.W. 2d 226, cert. den. 323 U.S. 777, 65 S. Ct. 189, 89 L. Ed. 621 (1944); *Hardin* v. *Fort Smith Couch & Bedding Co.,* 202 Ark. 814, 152 S.W. 2d 1015; *Miller Levee District No. 2* v. *Evers,* 200 Ark. 53, 137 S.W. 2d 915; *Ward* v. *Bailey,* 198 Ark. 27, 127 S.W. 2d 272; *Phillips* v. *Rothrock,* 194 Ark. 945, 110 S.W. 2d 26; *Easley* v. *Patterson,* 142 Ark. 52, 218 S.W. 381; *Dabbs* v. *State,* 39 Ark. 353, 43 Am. Rep. 275.

In order to put the matter in proper perspective, I will first outline the factual background. This is the second marriage for both parties. Appellant pays alimony of $10,200 per year to his former wife. He had "adjusted gross income" of $274,587 in 1977. He admits monthly take-home pay of $2,000 and monthly income of $2,596 from other sources. He has $13,552 in savings accounts and stocks and bonds worth $51,278. He claims living expenses of $2,000 per month and

indebtedness of $133,474. Just a month prior to the hearing, he had represented to appellee that he was the sole stockholder of Acme Construction Company, but appellee was told after appellant filed this divorce suit that he was a minority stockholder and that the majority stockholders were his daughter and son-in-law. Two years previously, when she had contemplated divorce and appellant desired a reconciliation, appellant had told her he was worth a million dollars and had $750,000 in certificates of deposit earning interest at the rate of $200 per day and that they could take trips, do anything they wanted to, and build a fine new home.

At the time of the marriage, appellee had been employed by John Tucker Furniture Company as a salesman, performing duties as an interior decorator. In January, before the hearing in the trial court, she had talked with one Larry Pegrim about employment as an interior decorator, but appellant had objected to her going into business with him. She felt that the opportunity might be again available to her. She had obtained psychiatric help because of extreme nervousness, which she attributed to her husband's conduct. She owned a dwelling house in North Little Rock from which she received $300 per month rent, but made a monthly mortgage payment of $165 on this residence. She also paid the cost of upkeep and had replaced an air-conditioner and a dishwasher in it.

The testimony of appellee on the critical points is undisputed. Appellant had been giving her $2,000 per month for household and personal expenses for two or three years, after he had increased the allowance from $1,500. She had numerous credit cards. For five years, appellant also had paid all medical and dental expenses of appellee and of her two children by a previous marriage. In addition, appellant furnished appellee with an automobile and the gasoline she used. He also had paid for the entertaining done by the couple. He told her to spend whatever she wanted to.

Obviously, these parties contracted the traditional, conventional marriage and this case should be treated in that light and not in the light of some other marriage or some set of statistics that may or may not be indicative of a breakdown of either the family as an institution or even of our previous

concepts of marriage, and the duties and obligations atten-
dant thereon.

Whether I agree with the majority in *Orr* v. *Orr,* supra, is
of no consequence, because it is the law of the land today. I
do not agree that *Orr* has the effect the majority of this court
has given it, because *Orr* dealt only with a statute governing
the award of alimony upon the dissolution of a marriage by
divorce. In Arkansas, the award of alimony upon divorce has
always been governed by statute. We are not dealing here
with a statute having to do with such an award. We are deal-
ing with a statute that governs while the marriage continues
in existence, and is in recognition of its continued existence.
We are also dealing with a case in which the husband, a
wealthy man, brought a suit for divorce against his wife,
whose means are rather limited to say the least.

Appellee sought the allowance of temporary alimony
and reasonable attorney's fees. We have used the term "tem-
porary alimony" but our statute does not speak in terms of
alimony. It relates to maintenance of the wife during the
pendency of the action and attorney's fees incurred in the
litigation. The court awarded "temporary support and
maintenance" and "temporary attorney's fees." We are not
considering permanent alimony or property awards, or the
condition of the wife after the marriage contract is terminated
by divorce, if that time is ever reached. We are considering
what happens to this needy wife during the course of the
litigation brought by the husband. It is not a question of how
she can fend for herself following the divorce. It is, how can
she fend for herself in the divorce action and while the
marriage contract is still in effect? The disparity between her
economic situation and that of her marriage partner is at
once apparent. It results from the mutual designs of the par-
ties and the long-standing, well recognized common law con-
cepts of marriage, which may today be said to be, and to have
been, the result of a long history of economic discrimination
against women, which was only slightly diminished by the
married women's acts. Even after those acts, the trend
toward making the sexes similarly situated with respect to
economic opportunity has been slow and no one can say, with
any confidence, that such a point has been reached. Certainly
it has not been attained to that degree that sex is not a valid

basis for classification in considering the wife's survival during the divorce action and assuring her the means for defending it. Eliminating the statutory provision for maintenance, costs of suit and attorney's fees to the needy wife would discriminate in favor of the non-dependent wives who find themselves defending a divorce suit, along with any husband who wants to rid himself of any obligation to a marriage partner, whom he has made dependent on him. But we all know far more women than men will be "disadvantaged" by elimination of "temporary alimony," suit money and attorney's fees, which I submit can be allowed in a case such as this, with or without the statute.

*Divorce* is statutory and the chancery courts exercise only the powers conferred by statute, not inherent chancery powers, in granting divorces and dividing property and awarding alimony when the marriage is dissolved. *Young* v. *Young,* 207 Ark. 36, 178 S.W. 2d 994, 152 ALR 327, in which *Bowman* v. *Worthington,* 24 Ark. 522, and *Ex parte Helmert,* 103 Ark. 571, 147 S.W. 1143, were cited. Still it was pointed out in *Young* that our statutes provide that the action for alimony or divorce shall be by equitable proceedings.[1] See Ark. Stat. Ann. § 34-1201 (Repl. 1962). Our statement in *Young* may well be accurate insofar as the power of the court to act is concerned. But it concerns the matter of *divorce* only. It should be noted that the quotation from *Helmert* in *Young,* recognizes that matters relating to divorce and alimony were originally of ecclesiastical origin and that the courts *generally* look to the statutes as the source of their power. Furthermore, *Helmert* was directed only to the question of power of the chancellor to make an order granting alimony in vacation. It should be noted that in *Young,* the court was concerned only with *grounds* for, and defenses against, *divorce*. Nothing said in *Young* related to allowance of support and maintenance or attorney's fees to the wife, pending divorce.

In any event, this court has said that the chancery courts and this court have the power to award support and

---

[1]To say the least, procedures in divorce cases are according to rules in equity cases. See *Jackson* v. *Jackson,* 253 Ark. 1033, 490 S.W. 2d 809. And relief may be denied on equitable grounds. *Krohn* v. *Krohn,* 221 Ark. 564, 254 S.W. 2d 453.

maintenance or "alimony" and attorney's fees to a wife in cases where a divorce was not granted to either party, without placing reliance upon any statute. See *McDougal* v. *McDougal*, 205 Ark. 945, 171 S.W. 2d 942; *Gabler* v. *Gabler*, 209 Ark. 459, 190 S.W. 2d 975. This is done on the basis that, even though a decree for divorce is denied, "alimony" may be awarded for the support and maintenance of the wife as in an independent action for alimony. *Shirey* v. *Shirey*, 87 Ark. 175, 112 S.W. 369; *Pryor* v. *Pryor*, 88 Ark. 302, 114 S.W. 700.

It has long been recognized in this state that an independent action for alimony may be maintained, without the necessity for alleging any grounds for divorce. *Wood* v. *Wood*, 54 Ark. 172, 15 S.W. 459; *Shirey* v. *Shirey*, supra; *Kientz* v. *Kientz*, 104 Ark. 381, 149 S.W. 86. Alimony is defined, at least for the purpose of such cases, as an allowance which a husband, by order of the court, pays to his wife, being separate from him, for her maintenance. *Wood* v. *Wood*, supra; *Shirey* v. *Hill*, 81 Ark. 137, 98 S.W. 731; *Bowman* v. *Worthington*, supra. Alimony (as thus defined before its extension by statute) applied only to divorce a mensa et thoro, presently referred to as divorce from bed and board or limited divorce, because that type of divorce presumes the relation of husband and wife still to exist, although the parties are separated. *Hill* v. *Rowles*, 223 Ark. 115, 264 S.W. 2d 638; *Bowman* v. *Worthington*, supra. See also *Rose* v. *Rose*, 9 Ark. 507.

Only by statute was the meaning of the word alimony extended to include an allowance by the court on dissolving the bonds of matrimony. *Bauman* v. *Bauman*, 18 Ark. 320; *Wood* v. *Wood*, supra. The holding in *Bowman* v. *Worthington*, supra, was based upon a statute that preceded Ark. Stat. Ann. § 34-1201. That statute was construed to bar the allowance of either alimony or maintenance, except as an incident to divorce. It was pointed out in *Wood* that the ruling was in line with many English and American cases but antagonistic to many others in which there was a broader jurisdiction of suits in equity for alimony alone, where a husband separated himself from his wife, without cause, and without furnishing her reasonable support. This court then concluded that § 34-1201 was in conformity with those authorities recognizing the jurisdiction of courts of equity in actions for support and maintenance or "alimony" and that it was the legislative in-

tent that an action for alimony be the action which had been utilized in those chancery courts that had held that such an action was maintainable *in equity*. The action was said to be by bill in equity. *Rosenbaum* v. *Rosenbaum*, 206 Ark. 865, 177 S.W. 2d 926. And, in such a case, the wife must establish her grounds for relief by a preponderance of the evidence. *Rosenbaum* v. *Rosenbaum*, supra. Her ability to earn any amount necessary for her support is properly taken into consideration. *Rosenbaum* v. *Rosenbaum*, supra.

It was on the basis of the holding in *Wood* that this court recognized the power of the chancery court to award "alimony" in a divorce proceeding, even though a divorce be denied. *Horton* v. *Horton*, 75 Ark. 22, 86 S.W. 824. It was but a short step to the holding that an equity court not only could, but in a case where the separation was not the fault of the wife, should, make some provision for the maintenance of the wife. *Kientz* v. *Kientz*, supra. Whenever there is cause for separate maintenance, an award for personal support of the wife is proper. *Walls* v. *Walls*, 227 Ark. 191, 297 S.W. 2d 648. And we have said that the suit for separate maintenance may be maintained "under the broad powers of equity." *Womack* v. *Womack*, 247 Ark. 1130, 449 S.W. 2d 399.

It seems clear to me that, even in a proceeding for divorce, the chancery court may, and should, exercise its equitable powers in matters pertaining to separate maintenance of the wife during its pendency. It must be remembered that a decree for judicial separation is not a divorce at all. It has no effect upon the marital status, which continues existent just as before the decree, which merely regulates the personal rights of the spouses in relation to the still continuing marital status. *Myers* v. *Myers*, 226 Ark. 632, 294 S.W. 2d 67; *Hill* v. *Rowles*, supra.

Alimony pendente lite is nothing more than separate maintenance during the pendency of a divorce action. See *Slocum* v. *Slocum*, 86 Ark. 469, 111 S.W. 806; *Glenn* v. *Glenn*, 44 Ark. 46.

In this state, temporary alimony during the pendency of the action is allowed only on the basis of need. *Tracy* v. *Tracy*, 184 Ark. 832, 43 S.W. 2d 539. We have repeatedly held that

the allowance of alimony pendente lite is within the sound discretion of the chancellor. *Lewis* v. *Lewis*, 222 Ark. 743, 262 S.W. 2d 456; *Gladfelter* v. *Gladfelter*, 205 Ark. 1019, 172 S.W. 2d 246; *Casteel* v. *Casteel*, 38 Ark. 477; *Hecht* v. *Hecht*, 28 Ark. 92.

The exercise of jurisdiction in divorce matters is based to a great extent upon the law of marriage and divorce as administered in the ecclesiastical courts, except as it may have been affected by statute. The basis for this approach was stated in *State ex rel Fowler* v. *Moore*, 46 Nev. 65, 207 Pac. 75, 22 ALR 1101 (1922), viz:

Prior to 1858, and from a very remote period in England, the ecclesiastical tribunals had exclusive jurisdiction over divorce, except that divorces a vinculo matrimonii were occasionally granted by special acts of Parliament during that time.

The common law which we received in this country from England was the common law as it existed when this jurisdiction still belonged to the ecclesiastical courts, and it has been held by this court that the law of marriage and divorce, as administered by the ecclesiastical courts, is a part of the common law of this country, except as it has been altered by statute. *Wuest* v. *Wuest*, 17 Nev. 217, 30 Pac. 886.

However, as indicated above, those courts could not grant an absolute divorce, and they could, at the most, grant a divorce from bed and board. *Maynard* v. *Hill*, 125 U.S. 190, 8 S. Ct. 723, 31 L. Ed. 654 (1888). Of course, we adopted the common law of England. Ark. Stat. Ann. § 1-101 (Repl. 1976).

At a very early date, this court recognized the fact that our chancery courts exercise the jurisdiction once vested in the English ecclesiastical courts. In *Rose* v. *Rose*, 9 Ark. 507, we said:

*** But beyond this the jurisdiction over divorces and alimony (which is not necessarily an integral part of a decree for a divorce even when granted *a mensa et thoro,* and had no place in the English divorce *a vinculo*

*matrimonii*) belonged exclusively to the ecclesiastical courts, and was never exercised in England by any other courts except only during the usurpation of Cromwell while the spiritual courts were closed, \*\*\* which jurisdiction the chancery courts renounced upon the restoration and resumption of authority by the ecclesiastical courts. \*\*\* So, in our body politic, if by any means the ordinary tribunals for affording relief be destroyed, some other tribunal must be found to supply its place, which is generally the courts of equity, it being the boast of those tribunals to give relief where others are incompetent. Upon this general foundation, then, in reference to which our constitutional and statutory provisions as these subjects are to be interpreted, it is altogether safe to assume that the chancery courts of this **State have rightfully, as to divorce and alimony, all the** powers of the English ecclesiastical courts as well as additional powers conferred by our statutes.

In *Bauman v. Bauman,* 18 Ark. 320, this court said that the chancery courts ought to employ the same rules of law which the ecclesiastical courts do, except insofar as they be found unsuited to our courts, or in conflict with specific constitutional or statutory provisions. It was the universal and unquestioned practice of the ecclesiastical courts to award alimony to the wife, whether as plaintiff or defendant, out of the husband's property, upon what was called, in ecclesiastical parlance, an allegation of faculties made in her behalf and some showing of the husband's ability. *Glenn v. Glenn,* 44 Ark. 46. The cited case involved alimony pendente lite.

It has been said that, in enacting the statute permitting alterations in alimony and maintenance, our legislature acted "in analogy to the alimony of the spiritual courts." *Bauman v. Bauman,* supra. Thus, the chancery courts today should not hesitate to exercise the powers of the ecclesiastical courts in matters pertaining to alimony and maintenance, unless prohibited from doing so by statute.

Marriage itself is "gender-based" and requires "gender-based" classifications. Only a male can be a husband and only a female can be a wife. *Singer v. Hara,* 11 Wash. App.

247, 522 P. 2d 1187 (1974); *Baker* v. *Nelson*, 291 Minn. 310, 191 N.W. 2d 185 (1971), appeal dismissed for want of a substantial federal question, 409 U.S. 810, 93 S.Ct. 37, 34 L. Ed. 2d 65; *Anonymous* v. *Anonymous*, 67 Misc. 2d 982, 325 N.Y.S. 2d 499 (1971); *Jones* v. *Hallahan*, 501 S.W. 2d 588, 63 ALR 3d 1195 (Ky. App., 1973); *M.T.* v. *J.T.*, 140 N.J. Super. 77, 355 A. 2d 204 (1976). There are no "equal protection" barriers to a state's requiring that husbands be males and wives be females. *Baker* v. *Nelson*, supra; *Singer* v. *Hara*, supra; *Jones* v. *Hallahan*, supra. In disposing of the equal protection argument, the Minnesota Supreme Court, in *Baker* (in which the U.S. Supreme Court found no substantial federal question), said:

> The equal protection clause of the Fourteenth Amendment, like the due process clause, is not offended by the state's classification of persons authorized to marry. There is no irrational or invidious discrimination. Petitioners note that the state does not impose upon heterosexual married couples a condition that they have a proved capacity or declared willingness to procreate, posing a rhetorical demand that this court must read such condition into the statute if same-sex marriages are to be prohibited. Even assuming that such a condition would be neither unrealistic nor offensive under the Griswold rationale, the classification is no more than theoretically imperfect. We are reminded, however, that "abstract symmetry" is not demanded by the Fourteenth Amendment.

Marriage is, and always has been, a contract between a man (husband) and a woman (wife). *B.* v. *B.*, 78 Misc. 2d 112, 355 N.Y.S. 2d 712 (1974). *Anonymous* v. *Anonymous*, supra. Marriage has been defined as "the civil status, condition, or relation of one man and one woman united in law for life, for the discharge to each other and the community of the duties legally incumbent upon those whose association is founded on the distinction of sex. Black's Law Dictionary, 4th Ed., p. 1123; *B.* v. *B.*, supra; 55 C.J.S. 806, Marriage, § 1. Marriage is an important institution that is fundamental to our very existence and survival. *Loving* v. *Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967); *Skinner* v. *Oklahoma*, 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655 (1942); *Gress* v. *Gress*, 209

S.W. 2d 1003, 15 ALR 2d 700 (Tex. Civ. App., 1948). As put in *Maynard v. Hill,* supra:

*** Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress. ***

It has been said that the home and family are the foundation of society. *In re McLaughlin's Estate,* 4 Wash. 570, 30 P. 651 (1892). Just two years ago, the United States Supreme Court classified the family unit as "perhaps the most fundamental social institution of our society." See *Trimble v. Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977). A doctrine of general acceptance is that, in divorce suits, the court represents the interest of the state throughout the proceedings. *State ex rel Fowler v. Moore,* supra. See also, *Pickston v. Dougherty,* 109 So. 2d 577, 71 ALR 2d 618 (Fla. App., 1959). The reason the state is an interested party is because it is important to society, as represented by the state, that the marital status and the home be preserved wherever possible. *Cahaley v. Cahaley,* 216 Minn. 175, 12 N.W. 2d 182, 157 ALR 1 (1943); *Gress v. Gress,* supra.

We have treated marriage in the same light as that in which it is viewed in other jurisdictions. In *Marshak v. Marshak,* 115 Ark. 51, 170 S.W. 567, LRA 1915E 161, Ann. Cas. 1916E 206, we said:

*** Marriage was instituted for the good of society, and the marital relation is the foundation of all forms of government. For that reason the state has an interest in every divorce suit, and the marital relation, once established, continues until the marriage contract is dissolved upon some ground prescribed by statute. ***

See also, *Phillips v. Phillips,* 182 Ark. 206, 31 S.W. 2d 134.

It is the public policy of this state to surround the marriage relation with every safeguard and to support and maintain the marriage status wherever it is reasonable to do so. *Phillips* v. *Phillips,* supra; *Hill* v. *Rowles,* supra.

Marriage has been regarded as a civil contract everywhere in this country. *Meister* v. *Moore,* 96 U.S. 76, 24 L. Ed. 826 (1878); Ark. Stat. Ann. § 55-101 (Repl. 1971); *Reaves* v. *Reaves,* 15 Okla. 240, 82 P. 490 (1905); *Dodson* v. *State,* 61 Ark. 57, 31 S.W. 977. See also, *Smiley* v. *Smiley,* 247 Ark. 933, 448 S.W. 2d 642; *Bickford* v. *Carden,* 215 Ark. 560, 221 S.W. 2d 421. We have called it a solemn contract. *Worden* v. *Worden,* 231 Ark. 858, 333 S.W. 2d 494; *Shatford* v. *Shatford,* 214 Ark. 612, 217 S.W. 2d 917. It is a contract to which society is a party and in which it has a deep interest. *State ex rel Fowler* v. *Moore,* supra; *Pickston* v. *Dougherty,* supra; *State* v. *Bittick,* 103 Mo. 183, 11 LRA 587 (1891). See also, *Smiley* v. *Smiley,* supra. It is subject to regulation under the state's police power. *Dodson* v. *State,* supra. Even so, the right to enter into the marriage contract is not conferred by statute. *Meister* v. *Moore,* supra. But because of the state's interest in its preservation, the parties themselves cannot terminate it. *Smiley* v. *Smiley,* supra. The common understanding of marriage in this country is that the two parties have undertaken to establish a life together and assume certain duties and obligations. *Lutwak* v. *U.S.,* 344 U.S. 604, 73 S. Ct. 481, 97 L. Ed. 593 (1953). The contract is to be husband and wife and to assume all rights and duties of the marital relationship. *Jambrone* v. *David,* 16 Ill. 2d 32, 156 N.E. 2d 569 (1959). Among these obligations are those stated in *Safranski* v. *Safranski,* 222 Minn. 358, 24 N.W. 2d 834 (1946), as follows:

*** Marriage is a civil contract which differs from other contracts in that it cannot be dissolved by the parties themselves but only by the judgment of a competent court. The marriage contract creates a status or relationship which carries responsibilities and duties which the parties may not by mutual agreement terminate or otherwise avoid. Amongst the obligations imposed thereby is the obligation of the husband to care for and support his wife, to provide a home for her, and to maintain, support, educate, and provide a home for any children born of such marriage. ***

Long ago, we said that by the contract of marriage, the husband assumes the obligation to support his wife and the law will enforce the duty. *Bowman* v. *Worthington*, 24 Ark. 522, 538.

It has always been one of the duties and obligations of a husband to support and maintain his wife, in the manner suitable to his station and condition in life (or according to the station in which they live as long as they are married), even though they live separately, if the separation is not through her fault. *McConnell* v. *McConnell*, 98 Ark. 193, 136 S.W. 931, 33 LRA (n.s.) 1074; *Kientz* v. *Kientz*, 104 Ark. 381, 149 S.W. 86; *Welch* v. *Welch*, 225 Ark. 372, 282 S.W. 2d 600; *Pledger* v. *Pledger*, 199 Ark. 604, 135 S.W. 2d 851; *Bonner* v. *Bonner*, 204 Ark. 1006, 166 S.W. 2d 254; *Stearns* v. *Stearns*, 211 Ark. 568, 201 S.W. 2d 753. It has been recognized in at least one jurisdiction that the duty of support under the marriage is not necessarily totally gender-based. In *Williams* v. *Williams*, 34 Ill. App. 2d 210, 181 N.E. 2d 182 (1962), the court said:

> The marital obligation is the obligation to live, conjugally, with the other, to love and support, protect and defend the other. It is a composite of many responsibilities and duties; ***

In this state, recognition has been given to changing social conditions and the fact that the marriage contract is not necessarily static and is subject to change by the state, but not the parties. In our recently adopted Arkansas Criminal Code, recognition has been given to modern realities of the situation regarding the obligation of one spouse to the other with reference to support and also regarding the likelihood that a marriage partner of one sex is more likely to be dependent than the other, in connection with Ark. Stat. Ann. § 41-2405 (Repl. 1977), the section on non-support. Under that section, a person commits the offense of non-support if, without just cause, he fails to provide support to his spouse who is physically or mentally infirm or *financially dependent*. Under this code, "he" or "him" includes any natural person, so either a husband or a wife could be guilty of non-support. The following portion of the commentary to this section clearly recognizes conditions in Arkansas:

It should also be observed that the section is facially neutral with respect to the sex of the offender; wives and mothers as well as husbands and fathers are subject to prosecution. This effects a minor change in the law. Under old § 41-2405 (Repl. 1964), a woman could be prosecuted for abandoning or deserting an infirm or financially dependent husband but not for failure to support him. Parity of treatment was dictated by equal protection considerations as well as the general Code policy against defining an offense that, by its terms, can only be committed by a person of a particular sex. The practical effect of treating husband and wife the same with respect to support of each other is slight since the "victim" spouse must be either "physically or mentally infirm, or financially dependent." Given present employment opportunities for the respective sexes, a wife is far more likely to be financially dependent.

I have devoted most of my extended discussion to the matter of temporary alimony. But, for the most part, it is equally applicable to the allowance of suit money, including attorney's fees. In this state, there has always been a concern about the ability of the dependent marriage partner to adequately defend a divorce suit. In *Glenn* v. *Glenn*, 44 Ark. 46, we said:

> In the absence of any proof of separate property in a wife, it is just and reasonable to compel the husband to furnish the wife with means to defend a suit by him for a divorce. Otherwise she would be at his mercy. And for the same reason he would be secure against the best founded suit for a divorce on her part, if she were bound helpless to prosecute. He is compelled to furnish her with necessaries suitable to her station in society, and to his means. Alimony, *pendente lite*, may be a greater necessity than anything else. ***

In *Bauman* v. *Bauman*, 18 Ark. 320, it was held that attorney's fees and money to defray the expenses of the suit are to be considered in fixing the amount of alimony pendente lite, either as a part thereof, or in addition thereto. There has been

no change in our position throughout the years.[2] The purpose of awarding suit money is to insure an efficient preparation of the case and a fair and impartial trial, and where the suit is brought by the husband, to enable the wife to defend the action or prosecute a cross-complaint. 1 Nelson, Divorce and Annulment 404, § 12.04.

We have never considered the allowance of suit money and attorney's fees to be a matter of right. *Ryan v. Baxter,* 253 Ark. 821, 489 S.W. 2d 241; *Tilley v. Tilley,* 210 Ark. 850, 198 S.W. 2d 168; *Warren v. Warren,* 215 Ark. 567, 221 S.W. 2d 407; *Gladfelter v. Gladfelter,* 205 Ark. 1019, 172 S.W. 2d 246; *McGuire v. McGuire,* 231 Ark. 613, 331 S.W. 2d 257. Attorney's fees may be denied a wife on equitable grounds, even where the husband is unsuccessful in a suit against the wife. *Reibstein v. Reibstein,* 220 Ark. 783, 249 S.W. 2d 847.

In a highly regarded text on divorce, the author points out that in some jurisdictions it has been held that the power to award temporary alimony or suit money must be derived from statute. Arkansas is not one of those states. The writer continues, saying that the decided weight of authority holds that jurisdiction of the matrimonial action includes, as an incident, power to award both temporary alimony and suit money, pending the action. 1 Nelson, Divorce & Annulment, 408, § 12.09. That authority considers "temporary alimony," "alimony ad interim" and "alimony pendente lite" as synonymous terms. 1 Nelson, Divorce & Annulment, 403, §

---

[2] I am not unaware of *Walker v. Walker,* 148 Ark. 170, 229 S.W. 11 and *Kincheloe v. Merriman,* 54 Ark. 557, 16 S.W. 578, 26 Am. St. Rep. 60. I do consider that what is said in those cases is dictum, insofar as *defending* a suit for divorce is concerned. *Kincheloe* involved an action at law by an attorney against a husband to recover fees for services rendered the wife in connection with a contemplated suit for divorce against the husband, which was never instituted. Statements that services of an attorney in a suit for divorce have no relation to protection of a wife are inconsistent with our other decisions on the question, at least where a defense by the wife is concerned. In *Walker,* the court permitted a husband to exempt his wages in a garnishment proceeding by which the wife sought to recover a judgment for attorney's fees in a decree awarding her a divorce. Perhaps the right to fees in such a case is only statutory, as stated in *Walker.* I do not believe that the same can be said when the husband brings the suit. Neither temporary alimony (separate maintenance) nor attorney's fees have ever been allowable to a wife who brings a suit against a husband, without a showing of merit in her cause of action. *Countz v. Countz,* 30 Ark. 73.

12.02. According to him, "suit money" ordinarily means money necessary to enable a spouse, generally the wife, to carry on and defend the matrimonial action. 1 Nelson, Divorce & Annulment, 404, § 12.04.

This court has always recognized that in matters pertaining to allowance of support and maintenance or alimony pendente lite, and attorney's fees as well, the relative financial abilities of the parties are an important consideration. See, e.g., *Rosenbaum* v. *Rosenbaum,* 206 Ark. 865, 177 S.W. 2d 926; *Tilley* v. *Tilley,* supra; *Warren* v. *Warren,* supra; *McGuire* v. *McGuire,* supra. This court has not hesitated to treat the matter of support and maintenance on the basis of equity, as previously pointed out. Furthermore, we have recognized in *Orr* v. *Orr,* 206 Ark. 844, 177 S.W. 2d 915, that a wife was entitled to have the equitable remedy of specific performance of a written contract which was a property settlement, dividing personal property in a divorce action, in affirming a chancery court's denial of a motion to transfer the case to law.

Since an action for separate maintenance is a suit in equity which is not governed by any statute, and the allowance of alimony is within the power of the courts of equity, independent of statute, I think that a court of equity can, by exercise of equitable powers, award the wife in this case separate maintenance (or alimony in the classic, rather than the statutory, sense) during the pendency of the action and attorney's fees for her defense in this case, regardless of the constitutionality of § 34-1210, just as this court did in approving the allowance of alimony to a wife against whom a divorce was granted. By the same token, I think that a court of equity could avoid the equal protection impact of *Orr* by using the powers of equity to award separate maintenance and attorney's fees to a husband who is dependent upon his wife, without any statutory authorization. The powers of the court of equity in dealing with change are extensive and, were it not so, they probably would never have come into being. In support of my position, I take the liberty of quoting extensively from two sections of American Jurisprudence, Vol. 27, Equity, §§ 12 and 103, pp. 529 and 624:

§ 12. New and novel cases.

Ordinarily, the fact that an action in equity is an unusual one because the facts upon which it is based are unusual is not sufficient to condemn the petition or complaint, since it is a distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions, and mold its decrees so as to do equity between the parties. Peculiar and extraordinary cases will arise in the complex and diversified affairs of men, which, perhaps, cannot be classed under any of the distinct heads of equity jurisdiction, but which must be acknowledged, nevertheless, to come within the legitimate powers of a court of equity, because complete justice cannot otherwise be done between the parties. Therefore, when no remedy exists at law, courts of equity, to prevent injustice and in many cases on principles of general policy, will go far in granting relief. Indeed, it is the duty of a court of equity to adapt its practice and course of proceeding to the *existing state of society,* and not, by too strict an adherence to forms and rules established under different circumstances, to decline to administer justice and enforce rights for which there is no other remedy. While the court, in the exercise of its power to accord extraordinary relief, is restrained by fixed rules and established principles, a want of jurisdiction is not inferred from the novelty of the disputed question. By the *adaptation of old rules to new cases,* the jurisdiction of equity may be said to be constantly growing and expanding. The fact that there is no precedent for the precise relief sought is not fatal to equity jurisdiction, since precedent is only a guide and not a bar. So, where grounds calling for the exercise of equitable power exist, the court will not hesitate to act; otherwise, gross injustice might be perpetrated under the guise of forms of law. *** [Emphasis mine.]

§ 103. Relief available, generally; adaptation to facts and circumstances.

The power of equity is said to be coextensive with the right to relief; it is as broad as equity and justice require. In the administration of remedies, an equity court is not bound by the strict or rigid rules of the common law; on the contrary, the court adapts its relief and

molds its decrees to satisfy the requirements of the case and to protect and conserve the equities of the parties litigant. The court has such plenary power, since its purpose is the accomplishment of justice amid all of the vicissitudes and intricacies of life. It is said that equity has always preserved the elements of flexibility and expansiveness so that *new remedies may be invented or old ones modified in order to meet the requirements of every case and to satisfy the needs of a progressive social condition.* In other words, the plastic remedies of equity are molded to the needs of justice and are employed to protect the equities of all parties, and the flexibility of equitable jurisdiction permits innovation in remedies to meet all varieties of circumstances which may arise in any case. Moreover, the fact that there is no precedent for the precise relief sought is of no consequence. Where grounds calling for the exercise of equitable power to furnish a remedy exist, the court will not hesitate to act, even though the question presented is a novel one. But while it is generally the province of equity to administer a remedy where none exists at law, a court of equity may not, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law or without authority of law. *** [Emphasis mine.]

While a court of equity may not be able to give the plaintiff all he asks, there is no doctrine which prevents the court from giving him as much as it can. Thus, it has been held that in an action to establish a fee interest in land, the fact that the court might not be able to decree a title in fee would not render it powerless to decree a life estate or a tenancy for years.

This is not a novel approach in Arkansas. In *Whitaker & Co.* v. *Sewer Improvement Dist. No. 1 of Dardanelle, Ark.,* 229 Ark. 697, 318 S.W. 2d 831, this court capsuled the matter just quoted from the text, thus:

A court of equity is a court of conscience: a forum wherein justice is done, sometimes stripped of technicalities and red tape. A court of equity should be as alert to afford redress as the ingenuity of man is to cause situations to develop which call for redress. ***

I do not agree that *Orr* has so altered the marriage contract that Ark. Stat. Ann. § 34-1210, with its stated limitations and those put upon it by the court, is unconstitutional. Not only is there flexibility in equity, but the Fourteenth Amendment allows considerable flexibility. In *Skinner* v. *Oklahoma,* 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655 (1942), wherein the U.S. Supreme Court had discussed marriage, the court, speaking through Mr. Justice Douglas, said:

> It was stated in *Buck* v. *Bell,* supra, that the claim that state legislation violates the equal protection clause of the Fourteenth Amendment is "the usual last resort of constitutional arguments." 274 US p. 208, 71 L ed 1002, 47 S Ct 584. Under our constitutional system the States in determining the reach and scope of particular legislation need not provide "abstract symmetry." *Patsone* v. *Pennsylvania,* 232 US 138, 144, 58 L ed 539, 34 S Ct 281. They may mark and set apart the classes and types of problems according to the needs and as dictated or suggested by experience. See *New York ex rel. Bryant* v. *Zimmerman,* 278 US 63, 73 L ed 184, 49 S Ct 61, 62 ALR 785, and cases cited. It was in that connection that Mr. Justice Holmes, speaking for the Court in *Bain Peanut Co.* v. *Pinson,* 282 US 499, 501, 75 L ed 482, 489, 51 S Ct 228, stated, "We must remember that the machinery of government would not work if it were not allowed a little play in its joints." Only recently we reaffirmed the view that the equal protection clause does not prevent the legislature from recognizing "degrees of evil" (*Truax* v. *Raich,* 239 US 33, 43, 60 L ed 131, 136, 36 S Ct 7, LRA 1916D 545, Ann Cas 1917B 283) by our ruling in *Tigner* v. *Texas,* 310 US 141, 147, 84 L ed 1124, 1128, 60 S Ct 879, 130 ALR 1321, that "the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."

I believe that, even if § 34-1210 is unconstitutional, the chancery court, in the exercise of its powers, both as the successor of the ecclesiastical courts and as a court of equity, could have made the awards made in this case, in spite of *Orr*.

I am authorized to state that Mr. Justice George Rose Smith joins in this opinion.