The Honorable Gene Wilhoit, Director General Education Division Arkansas Department of Education 4 State Capitol Mall Little Rock, Arkansas 72201
Dear Mr. Wilhoit:
This is in response to your request for an opinion on the Department of Education's application of the school funding formula. Specifically, you note that Act 34 of 1983 (Ex. Sess.), now codified as A.C.A. 6-20-302 (Repl. 1993), contains the formula for calculating the Minimum Foundation Program Aid to be distributed to school districts. Section 4(B)(iii) of the Act sets forth the method for determining the "charged" personal property tax assessment. You note that that section provides:
 (iii) PERSONAL PROPERTY. For school districts located in counties that have been reassessed, the charged assessment used shall be the actual assessment for the calendar year prior to the base year multiplied by the ratio of the taxes due to be collected in the current or latest year to the taxes due to be collected in the base year.
You indicate that it has come to your attention that since enactment of this legislation, the Arkansas Department of Education has been calculating "charged personal property assessment" by multiplying the actual assessment for the calendar year prior to the base year times the following ratio: taxes due to be collected in the current or latest year, minus any of those current taxes that result from millage increases since reassessment or from additions to personal property wealth, to the taxes due to be collected in the base year.
You ask whether the Department's application of the funding formula in the manner above is consistent with Act 34 of 1983 (Ex. Sess.).
It is my opinion that the answer to your question is "no."
The formula for calculating state aid allocations to school districts is actually found at A.C.A. 6-20-306(b) (Repl. 1993). This subsection provides as follows:
 Each district's state aid allocation shall be an amount determined when its adjusted local resource rate per weighted average daily membership is subtracted from the state base equalization rate per weighted average daily membership and the difference is multiplied by its weighted average daily membership of the previous year.
The provision to which you refer, A.C.A. 6-20-302 (4)(B)(iii),(regarding the personal property charged assessment), appears in the definitional section of the subchapter, and is important to the formula because it is ultimately used to calculate both the "adjusted local resource rate per average daily membership" for each school district, and the "state base equalization rate per average daily membership." These two terms are crucial to the formula set out above.
Some explanation will illustrate how the definition of "personal property charged assessment" affects the formula. The "personal property charged assessment" for a particular district (the computation of which is the subject of this opinion) is multiplied by a uniform preset millage amount or "charge" (with certain adjustments). See A.C.A. 6-20-306(a). This resulting amount is added to the amounts received when similar charges are levied against real property, utility property, and regulated carrier property of the district under the same section, and this sum, along with certain other revenues, make up a district's "total local resources." See A.C.A. 6-20-302(7). Another sum is subtracted from this amount to arrive at the district's "net local resources." See A.C.A. 6-20-302(8). "Net local resources" is a key factor in determining both "adjusted local resource rate per weighted average daily membership" and the "state base equalization rate per weighted average daily membership." See A.C.A. 6-20-302, subsections (10) and (12). The "adjusted local resource rate per weighted average daily membership" means the net local resources of a school district divided by the weighted average daily membership for the previous year of the respective school district. A.C.A. 6-20-302(10). The "state base equalization rate per weighted average daily membership" means an amount determined when the sum of the net local resources of all districts in the state and the total state aid available for distribution is divided by the state's total weighted average daily membership of the previous year. A.C.A. 6-20-302(12). Under the formula, the former figure is subtracted from the latter, and the result is multiplied by the weighted average daily membership of the previous year. See A.C.A. 6-20-306(b). Thus, the calculation of the "personal property charged" assessment affects the calculation of a district's "net local resources," and therefore ultimately affects the first two variables in the formula for distributing state aid to school districts.
Your question, with regard to calculation of the "charged personal property assessment," is whether it is lawful to subtract "taxes [resulting] from millage increases since reassessment or from additions to personal property wealth" from the taxes due to be collected in the current year before that figure is divided by the taxes to be collected in the base year and the result multiplied by the actual assessment figures in the calendar year before the base year. It is my opinion, as stated above, that such action is contrary to the act. The section to which you refer, A.C.A. 6-20-302(4)(B) (iii), does not authorize any subtractions from the numerator of the factor used to determine the "personal property charged assessment." The language of the statute is plain and unambiguous. It states that in counties which have been reassessed, the personal property charged assessment is to be determined by multiplying the actual assessment for the calendar year prior to the base year by a factor obtained by dividing the taxes due to be collected in the current year by the taxes to be collected in the base year. No deductions are authorized from the "taxes due to be collected in the current or latest year."
It has been stated that the legislative intent of a statute must be gathered from the plain meaning of the language used. Roy v. Farmers Merchants, Ins. Co., 307 Ark. 213, 819 S.W.2d 2
(1991). It has also been stated that when the will of the General Assembly is clearly expressed, the courts are required to adhere to it without regard to the consequences. Hatcher v. Hatcher, 265 Ark. 681, 580 S.W.2d 475 (1979). Additionally, the Supreme Court has no authority to construe a statute that is plain and unambiguous to mean anything other than what it says (Townsend v. State, 292 Ark. 157, 728 S.W.2d 516 (1987); and in such instances the court is primarily concerned with what the document says, not with what its drafters may have intended. Mourot v. Arkansas Board of Dispensing Opticians,285 Ark. 128, 685 S.W.2d 502 (1985).
It is my opinion, for all the foregoing reasons, that the answer to your question is "no."
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh